## RICHARDSON *et al.* v. AUGUSTINE.

1. CHANGE OF VENUE—*Discretion of the Court.* Section 56 of the code of civil procedure, relating to changes of venue, is not imperative or mandatory and does not require the granting of a change of venue upon any showing made therefor, but the court is vested with a sound discretion upon the showing made therefor by the applicant, to grant or refuse the same; and, on appeal, unless it appears to the court that there has been an abuse of such discretion by the court in the case, the action of the court below will not be disturbed.

2. COUNTER-SHOWING. The statute authorizes a counter-showing in opposition to the application, or the introduction of counter-affidavits or other extrinsic exidence in opposition. The showing contemplated is not an *ex parte* showing and other evidence can be considered by the court, in contradiction of the facts and circumstances shown in support of the application. (Per Dale, C. J.; McAtee, J. and Keaton, J.)

3. WHAT MUST BE SHOWN. Affidavits stating only conclusions are not sufficient. The facts and circumstances by which it shall be made to appear to the court that a fair and impartial trial cannot be had. must be shown in support of the application. When the facts and circumstances which make it to appear that a fair and impartial trial cannot be had, are shown to the court, by affidavits or other extrinsic evidence by the applicant, and if such facts and circumstances make it clearly to appear that a fair and impartial trial cannot be had, the judge should award the change of venue; otherwise it should be refused. .

4. ABUSE OF DISCRETION—*What Meant by.* By abuse of discretion is here meant a clearly erroneous conclusion and judgment—one that is clearly against the logic and effect of such facts and circumstances as are presented in support of the application, or against the reasonable, probable and natural deductions to be drawn from such facts and circumstances.

5. TIME OF DETERMINING APPLICATION. It is not error for the trial court to refuse to pass upon the application before the commencement of the trial or to postpone its determination until after the jury have been em-panelled for the trial of the cause. The change of venue need not be awarded or refused before the commencement of the trial. (Per Dale, C. J.; McAtee, J. and Keaton, J.)

*Error from the District Court of Noble County.*

Action to recover a deposit in a bank. Commenced and tried in the probate court of Noble county, and

appealed to the district court of said county by the defendants, where the plaintiff again had judgment, from which the defendants appeal.

*H. H. Howard, J. L. Pancoast,* and *C. A. Galbraith,* for plaintiffs in error.

No brief for defendant in error.

The opinion of the court was delivered by

TARSNEY, J.:   On May 18, 1896, when this cause was called for trial in the district court, the defendants filed their motion for a change of the venue of said cause from the county, and, in support of said motion, filed their affidavits stating that the cause of action arose out of the failure of the First State band of Perry, a banking institution doing business in Perry, Noble county, from June 11 to September 16, 1895; that defendants were sought to be charged in this action with liability to depositor in said bank at the time of its failure; that defendants believed they had a meritorious defense to said action; that some thirty cases, involving the same question, had been brought against defendants in the several courts of said county, and most of such suits were still pending therein; that ten or more of said cases had been tried in said probate court and one had been tried in the district court of said county; that a large number of persons, aggregating some one hundred or more, had been called as jurors in said causes; that the question involved in said causes had been investigated by two grand juries in said county; that a large number of persons had been called as witnesses, both before the grand jury and in the trial of said civil causes.

At the time of the failure of said bank, some 200 or

more persons were depositors therein, nearly all of whom suffered loss thereby; that such witnesses, jurors and depositors lived in the various parts of said county and were all acquainted with what purported to be the facts in said causes, and had freely and frequently discussed such facts in the neighborhoods where they resided; that at the time of the failure of said bank, the facts, or what purported to be the facts and circumstances connected therewith, were published in the newspapers of said county, and generally circulated among the people therein; that the failure of said bank created great excitement in said county, and was generally discussed among the peo. ple in every part of said county; that the impression and belief was thereby created, continued and still prevailed in every part of said county that defendants were guilty of wrong in connection with said bank, and were liable to the plaintiff and to the other depositors thereof; that numerous persons had made special and repeated efforts to incite a feeling of hostility to defendants; that there had at all times, since the failure of said bank, existed and now exists generally, in the minds of the people of said county, particularly the portion thereof competent to serve as jurors, great prejudice and bias against the affiants; that said defendants were then under indictment in said county on charges growing out of the failure of said bank; that the fact of the existence of such indictments was known generally over said county; that such indictments were secured, as affiants believe, because of such prejudice and bias, and for the purpose of coercing them into the payment of the claims of said depositors; that at the times of the trials of the other civil cases, numerous persons of the age to be competent as jurors, had been present and had heard the facts detailed and were acquainted therewith; that

numerous persons had gone about the public places in said county and made threats against the affiants, and in numerous ways expressed feelings of indignation and ill-will; that all the above facts and circumstances had created in the minds of the people, particularly those of age competent to serve as jurors, in every part of said county, the belief that defendants should be held to answer for the claim of the plaintiff and the other depositors of said bank, creating feelings of great prejudice and bias in the minds of such people; that defendant, by reason of the facts stated, could not have a fair and impartial trial of said or any similar cause in said county.

This affidavit of the defendants was supported by the affidavits of twenty-six other persons, in which the facts were substantially stated as above. When these affidavits were presented to the court, the judge thereof declined to pass upon the application for change of venue, until after the examination of the jury for the trial of the cause, stating that the *voir dire* examination of the jurors might be used as testimony in the consideration of the application, and immediately directed the clerk to call the jury.

On the examination of the jurors called and examined as to their qualifications, nineteen of those called were challenged for cause and the challenges sustained by the court. Twice during the empanelling of the jury, counsel for the defendants requested the court to pass upon the application for a change of venue, but the court declined and stated he would not pass upon it until the jury was empanelled.

After the peremptory challenges were exhausted, the application for change of venue was denied. In overruling the application, the court said:

"I think the examination of the jurors clearly shows that a fair and impartial trial can be had in this county. Of the jury, eleven jurors are absolutely without any impression on the questions to be tried. One lives in the city of Perry and has formed and expressed an opinion, but both parties are willing to accept him and of course that fact could not show ground for a change of venue. This is about the only way you can demonstrate whether a fair and impartial trial could be had—by an examination of the jurors themselves. I think, too, if the panel had been drawn by the sheriff outside the city of Perry, there would have been no difficulty in getting a jury."

Defendants duly excepted to the proceedings of the court and to the overruling of the application for a change of venue, and assigns the same as errors.

Section 56, of the code of civil procedure provides:

"In all cases in which it shall be made to appear to the court that a fair and impartial trial cannot be had in the county where the suit is pending, or when the judge is interested or has been of counsel in the case or subject-matter thereof, or is related to either of the parties or is otherwise disqualified to sit, the court may, on application of either party, change the place of trial to some county where such objection does not exist."

This court, *in re Brown*, 2 Oklahoma, 598, held that the right to a change of venue granted by this section was a right belonging to either party to the action and that the word "may," as used in said section, means "must," and in *Cox v. The United States*, decided by this court, at this team, we held that the words: "If it be shown to the court—" as appearing in § 49, art. 8, of the code of criminal procedure, as amended, Laws of 1895, p. 198, was equivalent to, and meant the same as the words: "Shall be made to appear to the court—" in § 56 of the civil code, *supra;* and in *Patswald v. The United States*, this volume p. 351, 49 Pac. Rep. 57, we

held that where the awarding or refusing of such change of venue is within the discretion of the court, the action of the court in awarding or refusing such change, will not be reversed, unless where an abuse of such discretion is shown by the record. We do not think that § 56 of the civil code is imperative or mandatory, requiring the granting of a change of venue upon any showing therefor, but that the sound discretion is vested in the court upon the showing made therefor by the applicant, to grant or refuse the same, and on appeal, unless it appears to this court that there has been an abuse of such discretion by the court in the case, the action of the court below will not be disturbed.

In *Gray v. Crockett,* 35 Kan. 56, Horton, C. J., speaking for the court, construing a statute identical in language with § 56, of our code of civil procedure, says:

" If the district court had overruled the application to change the place of trial upon the affidavit presented, we would unhesitatingly pronounce the ruling eminently correct, because it seems to us that the true rule in such a case is that such facts and circumstances must be proved by affidavit or other extrinsic evidence, and unless this clearly appears, a reviewing court will sustain the overruling of the application."

Our statute nowhere provides in express terms or by reasonable implication for a counter showing in opposition to the application or for the introduction of counter-affidavits or other extrinsic evidence in opposition. We are aware that in a number of the states, it is held that counter-affidavits or extrinsic evidence may be introduced in resistence to the application, but where it is so held, we think the statutes of the state are clearly distinguishable from ours, as in Wisconsin, where the language of the statute is:

"And such court or judge, reasonable notice of the

application having been given to the opposite party or his attorney, shall, is satisfied with the truth of the allegations, award a change of venue," etc.

In Iowa, in a statute providing for a change of judge, the language is:

"In the exercise of a sound discretion shall decide the matter of the petition according to the very right of it, and, if satisfied with the truth of the allegations, award a change of venue."

In those classes of cases it may well be contended and held that the judge of the court has a right to put in issue or call in question the truth of the statement of facts contained in the application, but the language of our statute: "In all cases in which it shall be made to appear to the court," we think contemplates at *ex parte* showing; that other evidence cannot be considered by the court in contradiction of the facts alleged in support of the application; but we have held in *Cox v. The United States, supra*, that the facts and circumstances by which it shall be made to appear to the court that a fair and impartial trial cannot be had must be shown in support of the application, and we think the true rule is, when the facts and circumstances which makes it to appear that a fair and impartial trial cannot be had, are shown to the court by affidavits or other extrinsic evidence, by the applicant, if such facts and circumstances makes it clearly to appear that a fair and impartial trial cannot be had, the judge should award the change of venue; but if the facts and circumstances taken as true, do not clearly make it to appear that a fair and impartial trial cannot be had, the judge should refuse the application. The discretion of the judge is to determine whether or not the facts and circumstances, as presented,

43—v.

Richardson *et al.* v. Augustine.

make it to clearly appear that a fair and impartial trial cannot be had.

If the trial judge abuses this discretion, the appellate court will correct such abuse. By abuse of discretion, is here meant a clearly erroneous conclusion and judgment —one that is clearly against the logic and effect of such facts and circumstances, or the reasonable, probable and natural deductions to be drawn from such facts and circumstances.

My conclusion being that the court below had no right to take into consideration the testimony elicited from the jurors upon their *voir dire* examination, it remains only for us to determine whether it clearly appears from affidavits filed by the defendants, in support of their application, that a fair and impartial trial could not be had, and whether the reasonable, probable and natural deductions from the facts and circumstances stated, makes it to clearly appear that a fair and impartial trial could not be had in the cause. Evidently there was grave doubt in the mind of the trial judge, or he would not have delayed ruling on the application until the testimony of the jurors had been taken, and we confess our inability to determine the meaning of the phrase, "clearly appear," if the facts and circumstances presented upon this application, did not make it to clearly appear that the defendants could not have a fair and impartial trial. The county was not a populous county. It had been settled and organized less than three years. The defendants had been connected with a bank, or were supposed to have been connected with a bank that had recently failed, holding the deposits of more than 200 of the citizens of the county. Charges of criminality against the defendants in connection with such failure, had been

made. Indictments were pending against them. Depositors in numbers were bringing actions against them to hold them liable individually for such deposits; hundreds of the people of the county, qualified by age for service as jurors, had been connected in some manner with the transaction, either as jurors, witnesses or spectators in the numerous cases that had been tried, or as grand jurors or witnesses in the criminal proceedings, and all had more or less familiarized themselves with the purported facts of the transaction. The details had been fully published in the newspapers of the county and had been generally circulated. Much excitement existed in the county and the facts had been generally discussed, and the impression and belief generally prevailed that the defendants were guilty of wrong and were liable to the plaintiffs and to the other depositors; and numerous persons had made special and repeated efforts to incite a feeling of hostility toward the defendants.

We cannot close our minds against the conviction that comes to us from a general knowledge that a feeling of intense hostility and prejudice must exist and does exist against those connected with a banking institution that fails under circumstances indicating criminality, and which results in the loss of the small deposits of the members of a community, new and struggling with the adversities of poverty. The statute authorizing a change of venue was intended to apply to some cases and to some conditions, and if the conditions did not exist in this case to which the statute was intended to apply, we cannot conceive of facts, circumstances or conditions where it would apply.

Certainly it was not intended to apply only in cases

where mob violence was so assertive as to prevent the administration of justice or the application of its safeguards.

I think the application for a change of venue should have been granted in this case and that it was error to refuse it.

II. While the statute does not in express terms provide that the application for change of venue shall be filed and determined before the trial has commenced, we think the spirit of it clearly requires this. Certainly no court would permit an application for change of venue to be filed after the parties had announced ready and had proceeded to trial, and the rights of the parties must be reciprocal. The trial had begun when the empanelling of the jury commenced, and the court would not have permitted the application to have been filed after that; and if he would not permit his filing, he had no right to then determine it. The question was not whether twelve men could be found in the county to grant the defendants a fair and impartial trial. The law gives a broader right to litigants than this. It is, to have a jury of fair and impartial men, selected from the body of the county, the people of which are fair and impartial, unprejudiced against the defendants and competent to grant them a fair and impartial trial. The twelve must be selected from an unprejudiced community. The defendants were entitled, not alone to the impartiality of a jury, but to the intelligence of a jury, and they were entitled to have that jury selected from the intelligence of the whole body of the people; otherwise, if ninety-nine out of one hundred were prejudiced and biased against the defendant and twelve were found, though lacking in intelligence, who were not biased or prejudiced, it might

be said that these twelve could give the defendants the fair and impartial trial which the law guarantees.

I think the court erred in not passing upon the application, upon the affidavits presented by the defendants and before proceeding to the empanelling of the jury.

For the reasons stated the judgment of the court below must be reversed and the cause remanded for a new trial. It is so ordered.

Bierer, J., who presided in the court below, not sitting; all the other Justices concurring except as to the views herein expressed upon the questions relating to a counter-showing and as to the time when the application must be determined. Upon those questions the views expressed in the opinion are the views of the writer.