Clarence KECK, doing business as Keck Construction Company, Plaintiff in Error,

v.

Dorris BRUSTER and Bonnez Bruster, Defendants in Error.

No. 39726.

Supreme Court of Oklahoma.

Feb. 13, 1962.

Foliart, Shepherd & McPherren, Oklahoma City, for plaintiff in error.

Reuel W. Little, Madill, for defendants in error.

HALLEY, Justice.

During the period from October, 1958, to February, 1959, defendant (Clarence Keck, d/b/a Keck Construction Company) assisted in the building of a new highway near Madill, Oklahoma, in Marshall County. In order to prepare the roadbed it was necessary to use explosives to break or crack some of the rock that was too hard to rip. The explosives caused underground vibrations or shock waves in the surrounding area.

Plaintiffs (Mr. & Mrs. Dorris Bruster) had built in 1956 a brick veneer home on their property near Madill at a cost of $12,000.00. The new highway passed near their home, the closest point being 225 steps away. While the construction of the highway was some distance away, they heard some explosions and could feel some vibrations. When the construction was passing nearest their home some of the explosions could be distinctly felt inside the house, causing dishes and windows to rattle and the house to be jarred. Some of the explosions sent dirt, gravel and some rock into the air which fell around the house. Immediately before the highway construction, the house had been in good condition. A consulting engineer testified in answer to a hypothetical question based on facts in evidence that in his opinion the damage to plaintiffs' house was a direct result of blasting by defendant.

Plaintiffs' testimony showed that after the highway construction the house had the following damage: the foundation under both the east and west wall was completely broken in two and both the east and west wall had several jagged cracks running up and down the wall; window frames were pulled away from the brick an inch or more; the hardwood floor throughout the house was unlevel and uneven; the roof sagged five or six inches and a rafter was broken; inside the house nearly every room had cracks in the walls and ceilings; and doors and windows did not function properly.

The jury returned a verdict for plaintiffs and against the appealing defendant. The defendant's motion for new trial was overruled and judgment entered.

Although defendant offered no requested instruction on the measure of damages to be used by the jury in assessing the amount of plaintiffs' recovery for damage to a building, he claims that the instruction given by the trial court was erroneous. After advising the jury that it could render a verdict for the cost of repair if such would restore the property to its former

condition, the trial court continued its instruction as follows:

"If, however, you find that said house may not be successfully repaired so that it will be substantially in as good a condition as it was before the injury, then you shall determine from the evidence the actual cash value of the house at the time of the injury and deduct therefrom the salvage value of the present house used in connection therewith, insofar as the salvage may be successfully used, and render a verdict for such actual cash value, less the salvage value. In this connection, the original cost and the cost of rebuilding immediately after the injury and damage are to be considered in computing damages to improvements; however, when the original cost and cost of rebuilding are used by you to arrive at the actual cash value of the property at the time of the injury, then you should make allowance for depreciation, deterioration, and any other factors bearing upon its condition at the time of the injury.

"Using the yardsticks outlined above, should you find from a preponderance of the evidence, under these instructions, in favor of the plaintiffs, you will assess the amount of their recovery for damages, if any, which you find from a preponderance of the evidence were sustained by plaintiffs as a direct and proximate result of the acts of the defendants, or either of them, and which must not be oppressive or unreasonable, but which you find will fairly and reasonably compensate plaintiffs and award them such sum as you determine, not to exceed in any event, the amount sued for, $10,000.00."

Plaintiffs cite Chicago, R. I. & P. Ry. Co. v. Quigley, 57 Okl. 260, 156 P. 669, L.R.A. 1918A, 273, which contains a statement of the measure of damages for total or partial destruction of a building in substantially the language of the quoted instruction.

In A. B. C. Construction Co. of Oklahoma v. Thomas, Okl., 347 P.2d 649, we stated the rules to be applied in this type of case:

"We are committed to the rule that where damages are of a permanent nature, the measure of damage is the difference between the actual value immediately before and immediately after the damage is sustained. Mid-Continent Petroleum Corporation v. Fisher, 183 Okl. 638, 84 P.2d 22; City of Stillwater v. Cundiff, 184 Okl. 375, 87 P.2d 947; Oden v. Russell, 207 Okl. 570, 251 P.2d 184. Where property can be repaired and substantially restored to its former condition, the measure of damage is the reasonable cost of repairing the damage and restoring it to its former condition. Ellison v. Walker, Okl., 281 P.2d 931."

The instruction given by the trial court in the instant case conforms with the rules stated in the cited cases. There was evidence that the value of the house was $12,500.00 prior to the damage and that the salvage value thereafter was $2,386.00. A contractor stated that the house could not be repaired to be in substantially as good condition as before the damage, but it could be rebuilt for $12,740.00 and by using the salvage material the net cost would be $10,354.00. Defendant's attorney on cross-examination of one of the plaintiffs showed that a repair estimate in the amount of $1,100.00 had been made by another contractor. The plaintiff stated that it was for a patch-up job and denied that such repairs were intended to substantially restore the house to its former condition. The defendant offered no evidence concerning damages. Such being the state of the record, we believe the instruction complained of was predicated upon competent evidence and the verdict of the jury in the amount of $6,500.00 is supported by sufficient competent evidence.

Defendant also contends that this judgment should be reversed and remanded to

the trial court with directions to sustain defendant's motion for change of venue. In support of his contention defendant cites Richardson v. Augustine, 5 Okl. 667, 49 P. 930, wherein the trial court's refusal to grant an application for change of venue was held to be error. In that case it was said to clearly appear that a fair and impartial trial could not be had in the county because of the following facts set out in affidavits filed by defendants in support of the application: that the action was one of 30 brought to charge defendants with liability to depositors of a bank located in the county, by failure of which some 200 depositors had suffered loss; that 11 or more of the actions had been tried in the county; that the bank failure created great excitement throughout the county and had been investigated by two grand juries; that hundreds of people of the county, qualified by age for service as jurors, had been connected in some manner with the transaction, either as jurors, witnesses, or spectators in the numerous cases that had been tried, or as grand jurors or witnesses in the criminal proceedings and were acquainted with the purported facts; that numerous persons had made special and repeated efforts to incite a feeling of hostility toward the defendants; that defendants were then under indictment, charged with criminal conduct in connection therewith; and that the impression and belief generally prevailed that the defendants were guilty of wrong and were liable to plaintiff and to the other depositors.

■ Such a showing of facts as that stated in Richardson v. Augustine, supra, is not made in the instant case. Here defendant's attorney in support of his motion for change of venue presented only two facts: (1) he adopted the request of an attorney for a defendant in another lawsuit between different parties for blasting damages that the trial court take judicial notice that 24 other cases (including the instant case) were pending in the same court involving the same subject matter, resulting from the same acts alleged in the petition (which the other attorney was defending) and similar acts in slightly different locations; and (2) an affidavit of an insurance adjuster who stated that the office in which he was employed then had pending property loss claims filed with various insurance companies by 69 property owners of Marshall County in connection with blasting damage incurred during highway construction in and near Madill, Oklahoma.

■ An application for change of venue is addressed to the trial court's sound discretion, and the ruling thereon will not be reversed on appeal unless it appears that there was a clear abuse of such discretion. Horton v. Haines, 23 Okl. 878, 102 P. 121; Southwestern Surety Ins. Co. v. Board of Com'rs of Coal County, 77 Okl. 137, 187 P. 467; Crutchfield v. Martin, 27 Okl. 764, 117 P. 194; Grand River Dam Authority v. Bymaster, 189 Okl. 245, 116 P.2d 902; Grand River Dam Authority v. Beauchamp, 189 Okl. 246, 116 P.2d 904. The trial court did not abuse his discretion in this matter in overruling the motion for change of venue.

■■ Finally, defendant states that the trial court erred in overruling challenges to the jurors. Here, too, the trial court's judgment will be sustained in the absence of an abuse of discretion. Lee v. Swyden, Okl., 319 P.2d 1009; Montgomery Ward & Co. v. Curtis, 199 Okl. 525, 188 P.2d 199; Meier v. Edsall, 192 Okl. 529, 137 P.2d 926. In his brief defendant quotes, from the record, questions to and answers of some of the prospective jurors. Concerning only one of those did defendant make a specific challenge for cause, which was denied. When questioned further by the court, that one stated that she could give the parties a fair and impartial trial. The record does not indicate that such prospective juror was selected as one of the twelve jurors in the case. Neither does the record contain the voir dire examination of all jurors. The only other challenge which defendant made concerning the jury was at the close of the voir dire examination as follows:

"* * * I challenge for cause all jurors, with the exception of Richard Livengood, based upon the fact that, either when asked individually or as a group, they stated they felt vibrations, and therefore, I believe that they should not sit as jurors in this cause, because of their past experience."

The challenge was overruled. The fact that the jurors had felt some vibration from explosions arising out of the construction of roads does not indicate prejudice against or partiality for either party.

We said in Rice v. Emerson, 181 Okl. 51, 72 P.2d 498:

"The manifest purpose of the statute [12 O.S.1951 § 572] is to enable litigants to select a fair and impartial jury to try and determine questions of fact involved in their controversies, and it is for the court to determine the validity of all challenges.

"In the case of International News Service v. News Publishing Co., 118 Okl. 113, 247 P. 87, 89, this court followed the well-recognized rule as to what constitutes a fair and impartial juror, as follows: 'Ordinarily, where a juror testifies that he believes he can, and the court finds as a matter of fact that he would, if selected, render an impartial verdict upon the evidence, he is an impartial juror, under our Constitution and the statutes of this state.'"

See also Pauls Valley Compress & Storage Co. v. Harris, 62 Okl. 103, 162 P. 216; City of Guthrie v. Snyder, 43 Okl. 334, 143 P. 8.

In view of the record on voir dire examination and the authorities cited above, we do not believe the trial court abused its discretion in overruling the challenges in question.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.