**HACO DRILLING COMPANY and Pacific Employers Insurance Company, Petitioners,**

v.

**Wilma Fern HAMMER and the State Industrial Court, Respondents.**

**No. 41876.**

Supreme Court of Oklahoma.

March 14, 1967.

Rehearing Denied April 18, 1967.

Watts, Looney, Nichols & Johnson, Oklahoma City, for petitioners.

Rinehart, Morrison & Cooper, Oklahoma City, for respondents.

BLACKBIRD, Justice.

One Joe A. Hammer suffered a heart attack on November 27, 1962, while working as an oil well driller for Haco Drilling Company, sometimes briefly referred to herein merely as "Haco". He never recovered sufficiently to return to work, and, after instituting proceedings docketed as Cause No. D–15410 in the State Industrial Court to recover workmen's compensation on account of his permanent disability therefrom, he and his then attorney settled his claim therefor on February 11, 1963, for the sum of $8300.00. As a preliminary to payment of said amount, brief testimony was taken from Hammer, a report from his physician was introduced in evidence, and the court entered an order, the body of which is as follows:

"Now on this 11 day of February, 1963, this cause comes on for consideration pursuant to hearing before Presiding Judge Jim Ed Douglas, at Oklahoma City, Oklahoma, this date, claimant appeared in person and by his attorney, Raymond Burger, and respondent and insurance carrier appeared by his attorney, H. W. Nichols, Jr., The Trial Judge being fully advised in the premises, finds:

"-1-

"That on November 27, 1962, claimant was working in a hazardous occupation *but his alleged heart attack did not arise out of and in the course of his employment on said date.*

"IT IS THEREFORE ORDERED, That claimant's claim for compensation be and the same is denied." (Emphasis added.)

In connection with receipt of the settlement money, and on the same date the above-quoted order was entered, Hammer, his wife, Wilma Fern, and his attorney all executed the same general written release of all claims against Haco; and the check for the $8300.00 was made payable to both Hammer and his wife.

Thereafter, while attempting to recuperate from his first heart atack, Hammer suffered others, and while still under medical care for his heart condition, suffered a fatal one on February 27, 1964.

Thereafter, in June, 1964, Wilma Fern, the surviving widow, instituted proceedings in the same court against Haco and the same insurance carrier, as respondents, to recover the death benefits prescribed by Tit. 85 O.S.1961, § 22, parag. 8.

By appropriate procedure, those respondents, hereinafter referred to as "petitioners", asserted the above-described settlement as a bar to the proceedings, and to the Industrial

Court's jurisdiction of the case, but their motions and/or challenges were overruled and/or rejected by the Court. After a trial in which evidence was introduced that Hammer's heart condition *did* arise out of and in the course of his hazardous employment with Haco, the Court, in November, 1965, entered an order awarding Wilma Fern, and the guardian of Hammer's surviving minor son, Rickie Von, the sum of $13,500.00, less the fees allowed their attorney. In its order, the trial tribunal included a finding, which reads, in part, as follows:

"That as a result of the accidental personal injury arising out of and in the course of his hazardous employment with the above named respondent, the deceased Joe A. Hammer, died on February 27, 1964, in Oklahoma City, Oklahoma, and that said death was caused by the personal injury sustained by the deceased while in the course of hazardous employment for the above named respondent; that the prior settlement by Joe A. Hammer during his lifetime, by an agreed order of denial, in Case Number D–15410 does not affect the rights of his decedent heirs at law as defined by the Workmen's Compensation Laws of the State of Oklahoma, to bring and recover death benefits under said Workmen's Compensation Law of the State of Oklahoma, * * *."

Alleged errors in the proceedings before the trial tribunal are asserted in the petitioners' petition for review, and argued pro and con in briefs by the parties, filed in this Court.

In their argument for vacation of the above-described death benefits award, petitioners, in effect, invoke principles of the doctrine of res judicata and/or estoppel by judgment. They first refer to the Industrial Court's finding in the hereinbefore quoted order it entered in Cause No. D–15410, supra, during Hammer's lifetime, and pertaining to his claim for disability compensation, that "his alleged heart attack did not arise out of and in the course of his employment * * *". They argue that said order, never having been appealed

from, must, under Tit. 85 O.S. § 29, be deemed final, and that said Court was without jurisdiction after said order had become final, to reconsider, in his widow's subsequent action for death benefits, the issue of whether Hammer's injury was sustained in the course of his employment, and to determine it contradictorily to the previous order. (In connection with this argument we notice that it claims no distinction between the heart attack Hammer suffered while on the job, and the subsequent one from which he died while under medical care. Consequently, for the purpose of considering the issue of law herein presented, we will, as the parties have, treat both attacks as indistinguishable, and as a part of the same heart condition and "personal injury", which Hammer suffered while employed.)

This Court has recently held that a workman's so-called "joint petition settlement", effected under the provisions of Tit. 85 O.S.1961, § 84, does not bar the claim of his widow "and children, if any, or next of kin" for the death benefits prescribed by the Workmen's Compensation Act. See Viersen & Cochran Drilling Co. v. Ford, Okl., 425 P.2d 965. But to give a complete answer to the argument advanced, in very general terms, by petitioners, it is necessary to deal with the specific question of whether, or not, the Industrial Court's finding in its quoted order of February 11, 1963, in Cause No. D–15410, supra, that Hammer's injury "did not arise out of and in the course of his employment" was binding on said Court, or was res judicata as to the parties later involved when the same question became an issue in his widow's subsequent action for death benefits on account of Hammer's death—tacitly conceded to have been ultimately caused by the same personal injury. The specific answer to this question is found in the discussions contained in Lewis v. Aubrey, Okl., 404 P.2d 1005, 1006, and Eaton v. Allen, Okl., 362 P.2d 93, and an analysis of the principles and authorities referred to therein, particularly Seaboard Air Line R. Co. v. Geo. F. McCourt Truck-

ing, Inc. (U.S.C.A., 5th Cir.), 277 F.2d 593, and Kelly v. Town of Milan, C.C.Tenn., 21 F. 842, 862–870. See also 30A Am.Jur. "Judgments", §§ 150–155, both incl., and the Annotation at 2 A.L.R.2d 514, 520, 551, 570.

■ As demonstrated in the Viersen & Cochran Drilling Company Case, supra, the proceeding the respondent commenced in the Industrial Court in 1964 for death benefits was "separate and distinct" from said court's cause No. D–15410, supra, which her now deceased husband commenced approximately a year and a half earlier, in which was entered the hereinbefore quoted order of February 11, 1963, containing the finding petitioners are relying upon to jeopardize respondent's present award of death benefits. In the Seaboard Air Line R. Company Case, supra, the Court said:

"If the prior judgment is conclusive of this action, *it must be* estoppel by judgment since the suits are based *on different causes of action.* But for estoppel by judgment to foreclose relitigation of issues in a subsequent suit, it is essential that the issue sought to be foreclosed was *actually litigated and determined* in the initial action." (Emphasis added.)

■ In this case, we are saved the necessity of determining whether the anomalous order that was entered February 11, 1963 in Cause No. D–15410 at the close of a hearing at which Joe A. Hammer, as the claimant, had given testimony, whose reasonable inference was that he suffered his attack *in the course of his employment* (for a reference to such an "anomaly" see Kelly v. Town of Milan, supra, 21 F. 842, 867) by noticing that, in the trial of the present case, the attorneys for the parties freely admitted to the court that said order was a "stipulated" one, made pursuant to a previously accepted settlement proposal. Thus, the situation here is in no material respect different from that in the Seaboard Air Line R. Company Case, supra, in which the court said:

"It is now admitted that the Railroad *never actually litigated* either *the issue* of its own actions or the conduct of the truck Driver. For reasons satisfactory to it, all of *these were washed out by the refuge which a fixed compromise settlement afforded.* Of course, this consent judgment as between the parties to it and their successors in privity was as binding and valid as one resulting from an adversary contest. But as a nonlitigated, court-approved compromise effectuated to avoid the risk of litigation, *it does not operate as an estoppel by judgment in a subsequent suit not between the same parties* or those in privity with them. This is so even though such persons might have been considered to be bound as parties or privies through concepts of derivative liability *had such judgment been entered after* litigation and *a judicial determination* concerning the operative effect of facts either proved or stipulated." (Emphasis added.)

Here, since it is clear from the record before us that the order of February 11, 1963 was *not a judicial determination on the merits* of the question of whether Respondent's now deceased husband, Joe A. Hammer, was injured in the course of his employment, but for all that the record shows, was, instead, merely a mode of placing of record, in such a way as to bar future litigation on the then pending claim *between the same parties who were then before the Court,* we must conclude that the controversial finding contained in said order constituted no obstacle to respondent's prosecution of her, and the couple's minor son's claim for death benefits, and furnishes no ground for vacating the Industrial Court's extant award of such benefits.

■ Petitioners' only further contention is that Respondent's signing of the general release, with her former husband and his attorney, when the check for $8300.00 was delivered in the hereinbefore described settlement of February 11, 1963, "completely destroys" any cause of action for death benefits she might otherwise have had in

the present case. In support of their position, they cite F. W. Woolworth Co. v. Todd, 204 Okl. 532, 231 P.2d 681. In that case, a Mrs. Cecilia Patterson was struck on the breast, while in one of the Woolworth Company's stores in 1936. More that a year later, she obtained a judgment for $1250.00 against said Company on account of its negligence in causing said injury. On the same day the judgment was rendered (February 3, 1938), it was paid, and through her attorney, she executed a release and satisfaction of it. Also, on the same day, Mrs. Patterson, joined by her husband, G. S. Patterson, executed a general release of the Woolworth Company for a consideration of $1650.00, *and, besides the $1250.00 she received for signing these releases, the husband G. S. Patterson received a separate check* made to his own order in the amount of an additional $400.00 for executing the general release. Mrs. Patterson died, in 1946, of cancer shown to have been induced by her breast injury, and, in a subsequent action, brought on Mr. Patterson's behalf, against the Woolworth Company for her wrongful death (inter alia), the plaintiff recovered a judgment which this court reversed on the ground (briefly epitomized) that Mr. Patterson's settlement with the defendant company wiped out the cause of action upon which he later obtained the judgment.

The present case is distinguishable from the Woolworth Case, supra. Although the wording of the release which respondent joined her former husband, Joe Hammer, and his attorney, in signing, upon the payment of the $8300.00 hereinbefore mentioned—if as broadly interpreted as that of the release in that case—might be thought to be broad enough for it to constitute a bar to her subsequent action for death benefits (in this connection notice also Kay Pharmacal Co. v. Dalious Construction Co., Okl., 276 P.2d 756, which, as should be significantly noted, was an appeal from a judgment dismissing a petition, after the sustaining of a demurrer to it) the evidence in this case indicates that it was never intended as such a bar, or if so, that it was ineffective, for that purpose, for want of consideration. See also 30A Am.Jur., § 153, supra, and Greeson v. Greeson, 208 Okl. 457, 257 P.2d 276, and other cases digested in 9 Okl.Dig. Judgment, under ■■■ Applying the same principles to the evidence concerning respondent's participation in, and asserted subjugation to, the present release, as are indicated in Gulf, C. & S.F. Ry. Co. v. Anderson, 120 Okl. 60, 250 P. 500, we have no difficulty in arriving at the proper answer to the petitioners' argument. There the Court said (at p. 502 of 250 P.):

"* * * while the plaintiffs are not permitted to vary the terms of a written agreement such as is here involved, *the question of consideration is always an open one,* and *whether the consideration paid* in the instant case *was* for damages already sustained or *to exempt* defendant *from any future damages* is not clear, and we are inclined to the opinion that *before a contract such as is here relied upon can be upheld that it must be clearly shown that the question of future damages, and the specific character and extent of such damages must have entered into the consideration and been within the contemplation of the parties at the time the* contract was entered into, *and* that *the consideration passing be adequate to cover such damages as may have been within the contemplation of the parties. We would not hold that a contract governing and exempting liability for future damages* resulting from the negligence of the defendant *might not be entered into,* but *it must be clear, definite, and unambiguous, and show on its face the exact nature, character and extent of the damages which are within the contemplation of the minds of the contracting parties,* and must be in the nature of a settlement for permanent and continuing damages * * *". (Emphasis added.)

It does not clearly appear within the four corners of the so-called "general" release involved here that it was contemplated to

forestall a later action for death benefits in the event of Joe A. Hammer's death from his heart condition. The release does not mention any such prospective claim in definite words, and the most that can be said for it, in that connection, is that it is at least ambiguous. Nor does it appear from the testimony given at the trial of this case that said release was intended to effect a forebearance of, or covenant, or contract, not to bring, such an action, or that the $8300.00 was intended to include any monetary consideration for such a forebearance. On the other hand, the trial court could have reasonably reached contrary conclusions from the Respondent's testimony, as follows:

"Q You are aware that a settlement was made for your husband's claim?

"A Yes, sir.

\* \* \* \* \* \*

"Q Had you agreed to the settlement yourself?

"A I signed a slip.

\* \* \* \* \* \*

"Q Now was anything said to you at that time, Mrs. Hammer, about that settlement intending to or being designed to preclude the right of any of the children to recover for death benefits, in the event your husband were to die from that injury?

"A No, sir.

"Q Was there anything said at all about any death benefits or any intent to preclude their rights?

"A. No, sir.

\* \* \* \* \* \*

"Q And isn't it a fact now, Mrs. Hammer, that you, Mr. Hammer, \* \* \* (the) attorney, myself \* \* \* were in Judge Douglas's office \* \* \* and it was announced to the Court that a settlement had been reached in this case. \* \* \*

"A That's right.

\* \* \* \* \* \*

"Q And following that this paper that the Court has marked Respondent's Exhibit No. \* \* \* 3 (the release) \* \* \* was signed and you received eighty-three hundred dollars ($8,300.00) did you not?

"A Yes, sir.

\* \* \* \* \* \*

"A My husband did.

\* \* \* \* \* \*

"Q You didn't actually receive that money?

"A I didn't receive it, no.

\* \* \* \* \* \*

"MR. COOPER:

\* \* \* \* \* \*

"Was the check made jointly, to Mr. and Mrs. Hammer?

"MR. NICHOLS: Yes.

\* \* \* \* \* \*

"Q That (release) was signed sometime after you all had left Judge Douglas's office?

"A Yes.

\* \* \* \* \* \*

"Q Well \* \* \* you did not participate in the discussion in Judge Douglas's office?

"A No, sir. \* \* \*."

In view of the wording of the release in question here, and of the absence of a clear showing that the Respondent's signing of it was intended to preclude her, in the event of Hammer's death, from instituting proceedings for death benefits on behalf of herself and/or the couple's son, Rickie Von, we cannot say that the trial tribunal's decision, in substance, that the settlement of Cause No. D–15410, supra, did not affect these parties' rights to such benefits, is either contrary to law or to the evidence. The award is therefore sustained.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY, LAVENDER and McINERNEY, JJ., concur.

HODGES, J., dissents.