2002 OK CIV APP 95

**Larry D. CLEVELAND and Brenda K. Cleveland, Plaintiffs/Appellees,**

**v.**

**DYN–A–MITE PEST CONTROL, INC., d/b/a Brewer–Russell Exterminating Co., Defendant/Appellant.**

**No. 95,680.**

Court of Civil Appeals of Oklahoma, Division No. 2.

April 30, 2002.

Rehearing Denied June 7, 2002.

Certiorari Denied Oct. 3, 2002.

Mike Barkley, David G. Graves, Barkley, Titus, Hillis & Reynolds, PLLC, Tulsa, for Plaintiffs/Appellees.

Lawrence D. Taylor, Tulsa, for Defendant/Appellant.

TOM COLBERT, Presiding J.

¶1 Dyn–A–Mite Pest Control, Inc., d/b/a Brewer–Russell Exterminating Company (Brewer–Russell), appeals a judgment entered upon a jury verdict in favor of Larry D. Cleveland and Brenda K. Cleveland. The issue on appeal in this action for negligence and deceit is whether the trial court erred in denying Brewer–Russell's motions for directed verdict and judgment notwithstanding the verdict. Based upon our review of the record and applicable law, we find that the trial court did not err and affirm the judgment.

## BACKGROUND

¶2 In October 1991, Larry and Brenda Cleveland purchased a home located at 2508 W. Greely in Broken Arrow, Oklahoma. They bought the home from Larry and Edith Eggemeyer, who purchased it from John and Linda Dowd. When the Eggemeyers sold the home to the Clevelands, they provided the Clevelands with a "Wood Destroying Insect Information" report, a visual inspection report prepared by Brewer–Russell. The Brewer–Russell service manager who prepared the report placed an "x" next to item number 8(B), which reads, "No visible evidence of infestation from wood destroying insects was observed." Item number 10 of the report provides a space for additional comments by the inspector. In this space, the service manager wrote, "previously treated by Brewer–Russell." No additional information was given.

¶3 The Clevelands moved into the home in the first week of November 1991. Within two weeks, they noticed a wet spot along the outside of the shower door in their master bathroom. Shortly thereafter, Larry Cleveland noticed a dust trail under the baseboard in the bathroom. He removed the baseboard and found "thousands of live termites." He later removed the shower to assess the damage. Larry contacted Brewer–Russell, and Dennis Forehand, the company's vice president, went to the home within a day or two to treat the affected area. Larry also made a report to the Department of Agriculture.

¶4 In January 1992, Forehand revisited the Clevelands and agreed to pay a portion of the cost for the repair of their bathroom. In February 1992, Larry Cleveland and Charles Forehand (Forehand's father) entered into an oral "settlement agreement," which was memorialized on February 5, 1992. The written release, drafted by Brewer–Russell, provided that Brewer–Russell would pay Larry $250 and treat the property as needed.

¶5 In March 1992, the Clevelands experienced a swarm of termites in their kitchen and called Brewer–Russell. An agent of Brewer–Russell went to the home and applied a topical treatment. In September 1992, the Clevelands experienced another swarm of termites in their living room and on their patio. Brewer–Russell again responded and treated the areas. In Spring 1993, the Clevelands experienced a third swarm in their attic, which Brewer–Russell then treated. In August or September 1993, the Clevelands experienced another swarm of termites on their back patio. When they contacted Brewer–Russell, Forehand refused to go back to their home, stating that the Clevelands had not paid their annual $60 inspection fee. Larry Cleveland purchased the treatment and applied it himself.

¶6 The $60 annual inspection fee was part of the consideration for an August 1989 contract between Brewer–Russell and John Hausam Realtors, the realtor for the Dowds. The contract was prepared at the time the Dowds were selling the home to the Eggemeyers and provided, "The contractor [Brewer–Russell] agrees to make a thorough inspection annually, and take the necessary measures to eradicate any termites should re-infestation be found for annual fee of *$60* payable when re-inspections and re-treatments are made for *10* years." When the Clevelands purchased the home from the Eggemeyers, Larry Cleveland's name was substituted for that of John Hausam on the contract.

¶7 When Brewer–Russell refused to go out to the Clevelands' home after the last incident in 1993, the Clevelands treated the refusal as a breach of the February 1992 release. In September 1994, they sued

Brewer–Russell for breach of contract, negligence, and negligent/wilful damage to property. During discovery, the Clevelands learned that, while the Eggemeyers owned the home, they had experienced live infestation of termites on several occasions, and Brewer–Russell had previously treated the home five times. In October 1996, the Clevelands filed a second amended petition, arguing that Brewer–Russell had a duty to disclose the history of previous treatments. The Clevelands added a claim of deceit.

¶ 8 A jury trial was held on May 1–4, 2000. On May 3, Brewer–Russell demurred to the evidence. The trial court overruled the demurrer. At the close of evidence on May 4, Brewer–Russell moved for a directed verdict, which was also denied. On May 5, 2000, the jury rendered a verdict in favor of the Clevelands, awarding them $10,000 in punitive damages, $10,000 in damages for the deceit claim, and $73,000 in damages for the negligence claim. Although the jury found in favor of the Clevelands on the breach of contract claim, it did not award damages. The jury found in favor of Brewer–Russell on a breach of oral contract claim. The trial court journalized the verdict in its June 6, 2000, order.

¶ 9 Brewer–Russell subsequently filed a motion for j.n.o.v. and a motion for a new trial. In an order filed November 29, 2000, the trial court denied both motions. This order also reflects that, on November 21, 2000, the trial court issued a *nunc pro tunc* order, modifying the June 6, 2000, journal entry to show that, because the jury awarded no damages for breach of contract, judgment was granted in favor of Brewer–Russell on that issue. Brewer–Russell now appeals the trial court's denial of its motions for directed verdict and j.n.o.v.

## STANDARDS OF REVIEW

¶ 10 Brewer–Russell's arguments on appeal are addressed to the trial court's denial of its motions for directed verdict and j.n.o.v. When reviewing a trial court's ruling on a motion for j.n.o.v. and a motion for directed verdict, the reviewing court applies the same test. *McInturff v. Okla. Natural Gas Transmission Co.*, 1970 OK 169, ¶ 9, 475

P.2d 160, 162. Conflicting evidence favorable to the movant is disregarded, and, unless there is an entire absence of proof showing the plaintiff's right to recover, the motion should be denied. *Sadler v. T.J. Hughes Lumber Co.*, 1975 OK CIV APP 30, ¶ 4, 537 P.2d 454, 456 (citing *Austin v. Wilkerson, Inc.*, 1974 OK 23, 519 P.2d 899).

¶ 11 Although Brewer–Russell's arguments on appeal are addressed only to the trial court's denial of its motions for directed verdict and j.n.o.v., we will briefly discuss the court's denial of Brewer–Russell's motion for new trial. "A trial court is vested with broad legal discretion in granting or denying a new trial, and unless it clearly appears that the trial court erred in some pure simple question of law or acted arbitrarily, its judgment will not be disturbed on appeal." *Dominion Bank of Middle Tenn. v. Masterson*, 1996 OK 99, ¶ 16, 928 P.2d 291, 294.

## DISCUSSION

### I.

¶ 12 Brewer–Russell's primary argument on appeal is that the trial court erred in denying its motions for directed verdict and j.n.o.v. because the company had no duty to disclose the termite history of the Clevelands' home when it prepared the visual inspection report in 1991. Brewer–Russell reasons that the inspection report required only a *visual* inspection of the property and stated that it was not a warranty against the presence of termites or termite damage. Brewer–Russell objects to the way in which the standard negligence instructions were given to the jury and argues that it was the trial court's duty, and not that of the jury, to first determine whether it had a duty to disclose the history of termite treatment to the Clevelands' home. Brewer–Russell further argues that the instructions as given effectively required the jury to determine whether a duty existed.

¶ 13 The trial court instructed the jury as to the definition of negligence and direct cause, and the requirements for proving damages. *See* Oklahoma Uniform Jury

Instructions (OUJI) 9.1, 9.2, and 9.6.[1] The trial court's journal entry reflects that Brewer–Russell did not object to the instructions before they were presented to the jury. The failure to object to instructions or to request alternate instructions waives the issue on appeal. *See Holloway v. State*, 1986 OK CR 1, ¶ 4, 712 P.2d 68, 69. Moreover, when a trial court gives a general instruction on an issue, the party opposing the instruction has the duty to request that a more specific instruction be given. *See Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, ¶ 26, 653 P.2d 907, 915. There is nothing in the record which indicates that Brewer–Russell requested that the trial court specifically instruct the jury that Brewer–Russell had a duty to disclose the history of termite treatments to the Clevelands' home. Thus, Brewer–Russell cannot object to the instructions, or the absence of any specific instruction, on appeal. For purposes of clarification, however, we will discuss the issue of duty in more detail.

¶ 14 Section 552 of the Second Restatement of Torts provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977). In *Chicago, Rock Island & Pacific R.R. v. Hawes*, 1967 OK 26, ¶ 10, 424 P.2d 6, 10, the Oklahoma Supreme Court explained that "where the standard of human conduct by which the parties' negligence, or their lack of it, is not prescribed by law, the determination of the matter must be left to the jury." Thus, it was within the province of the jury to determine whether Brewer–Russell's duty of ordinary or reasonable care encompassed the duty to report the termite history of the Clevelands' home on the inspection report.

¶ 15 There is evidence in the record to support a finding that such a duty existed. Dr. Kevin Mussett, an entomologist who owns a pest control company in Stillwater, Oklahoma, testified that, when his company prepares a wood infestation report, it makes a determination as to whether the home has been previously treated and notes that fact on the report. He further testified that wood infestation reports are prepared for the benefit of the buyer, and that Brewer–Russell's report, which lacked the dates and times of previous treatment, was inadequate and inaccurate. He stated that it is "critical" to state the areas which have been re-treated. Mussett, Forehand, and Larry Legg, a program administrator with the Department of Agriculture, testified that the Department of Agriculture has not addressed the issue of whether the termite history should be reported on a wood infestation report.

■ ¶ 16 On the other hand, Forehand testified that the Department of Agriculture requires pest control companies performing

---

1. Most significantly, instructions 9.2 and 9.6 provide, respectively:

"Negligence" is the failure to exercise ordinary care to avoid injury to another's person or property. "Ordinary care" is the care which a reasonably careful person would use under the same or similar circumstances. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide. Thus, under the facts in evidence in this case, if a party failed to do something which a reasonably careful person would do, or did something which a reasonably careful person would not do, such party would be negligent.

\* \* \*

Direct cause means a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened. For negligence to be a direct cause it is necessary that some injury to the property of a person in Plaintiff's situation must have been a reasonably forseeable result of negligence.

re-treatments to list prior treatments on the service order. Although Brewer–Russell presented testimony to the effect that providing purchasers with a termite history is not common in the pest control industry, we must disregard conflicting evidence favorable to the movant. *See Sadler*, 1975 OK CIV APP 30, ¶ 4, 537 P.2d at 456 (citing *Austin v. Wilkerson, Inc.*, 1974 OK 23, 519 P.2d 899).

■ ¶ 17 We agree that Brewer–Russell had a duty to disclose the termite treatment history of the Clevelands' home. The most important consideration in determining whether a duty exists is forseeability. Generally, a "defendant owes a duty of care to all persons who are forseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Wofford v. Eastern State Hosp.*, 1990 OK 77, ¶ 11, 795 P.2d 516, 519 (quoting *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976)). Brewer–Russell owed a duty to the Clevelands to disclose the previous termite history in the inspection report because the company knew the certificate was for the benefit of the Clevelands. Moreover, Forehand testified that most termite damage occurs behind the walls of a home and is not visible. Thus, it was foreseeable that the Clevelands could be harmed by Brewer–Russell's failure to disclose pertinent information.

¶ 18 Case law from other jurisdictions confronting similar situations supports our conclusion. In *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986 (D.C.1980), an inspection company suppressed a previous written report which revealed the full extent of termite damage and substituted a more favorably worded report which was given to the buyers at closing. The buyers discovered after closing that their home had extensive termite damage and sued the inspection company for negligence and fraud. The trial court found that the termite company owed no duty to the buyers because the company contracted with the seller, and there was no privity of contract between the company and the buyers.

¶ 19 The Court of Appeals stated, "It has long been settled that privity of contract is no prerequisite to a buyer's recovery against an expert who misevaluates an object, where the expert knows a potential buyer will rely on the expert evaluation." *Id.* at 991. The Court also explained, "A jury could conclude that [the real estate agent and inspection company] owed a duty to [the purchasers] to see that they received correct information on termite damage." *Id.* The Court further explained, "The jury could find that [the termite company] breached its duty to [the buyers] to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting." *Id.*

¶ 20 In *Pietramale v. Dugay*, 714 S.W.2d 281 (Tenn.1986), an inspector reported both the finding of no infestation and of existing damage. However, the inspection company did not report these findings in a single letter. Rather, the company sent three pages stapled together. The top page stated only that there was no active infestation. The third page stated there was damage to the home. At the closing, the parties assumed that the third page was simply a copy of the first. The court stated that, because the inspection company knew the buyers would rely upon the certificate, it "had a duty to [the buyers] to refrain from fraud or negligence in furnishing the certificate." *Id.* at 283–84.

¶ 21 In *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La.1993), the inspector issued a report which indicated there was no physical evidence of active and/or old infestation from subterranean termites. Relying upon the report, the buyers purchased the home. They later found extensive damage and claimed the inspector was negligent in misrepresenting the condition of the premises.

¶ 22 The Court explained, "The scope of the duty that [the inspection company] owed to the [buyers] was to use reasonable care and competence in obtaining or ascertaining facts for and/or in communicating the facts or opinion in the wood destroying insect report." *Id.* at 1016. The Court further explained that the duty was owed to the buyers because they were known to the inspection company and were the intended users of the report. The Court also stated that the buy-

ers' expected use of the report made their loss a forseeable probability. *Id.*[2]

¶ 23 In *Doskey v. Hebert,* 645 So.2d 674 (La.Ct.App.1994), a pest control company misrepresented to the buyers of a home that their home was termite free. The Court stated that the company had a duty "to provide accurate information to plaintiffs regarding the presence of termite activity, either current or past, in the home." *Id.* at 681.

¶ 24 Other courts have also imposed a duty of reasonable care upon pest control companies in communicating facts in termite inspection reports. *See Ex parte Hill,* 730 So.2d 214, 217 (Ala.1998); *Osborne v. Ladner,* 691 So.2d 1245, 1255 (La.Ct.App.1997); *Williams v. Jackson Co.,* 359 So.2d 798, 801 (Ala.Civ.App.1978); *Johnson v. Wall,* 38 N.C.App. 406, 248 S.E.2d 571, 575 (1978).

¶ 25 Brewer–Russell argues that, because it owed no duty to the Eggemeyers to recite the termite history of the home, it owed no duty to the Clevelands. In support of this argument, Brewer–Russell cites several cases involving negligence and third-party beneficiary theory.[3] Although the cases are unpersuasive, one case in particular, *Copeland v. Admiral Pest Control,* 1996 OK CIV APP 119, 933 P.2d 937, warrants discussion.

¶ 26 In *Copeland,* the plaintiff was bitten by a spider in a motel and sued the motel's pest control company, arguing that the company took it upon itself to exterminate the premises and keep it free of spiders and other dangerous insects. The company argued that it owed no duty to the plaintiff to eliminate pests from the motel or the warn of the danger of pests. The company further argued that the plaintiff was not a forseeable person to whom it owed a duty because it

was not the owner-operator of the motel and had no contractual relationship with the plaintiff.

¶ 27 A division of this Court first found that the pest control company was not liable under a third-party beneficiary theory because there was no evidence that the motel or the pest control company intended to benefit motel guests to the extent that guests could enforce the contract. *Id.* at ¶ 6, 933 P.2d at 939. The Court then found that the pest control company could not be held liable in negligence because it did not have a duty to eliminate every spider from the motel. *Id.* at ¶ 13, 933 P.2d at 940.

¶ 28 *Copeland* is clearly distinguishable. In the instant case, Brewer–Russell knew the wood infestation report was for the benefit of the Clevelands and the Clevelands relied upon the report to their detriment. Brewer–Russell's knowledge placed the Clevelands within the ambit of foreseeability of harm. We conclude that Brewer–Russell had a duty to disclose the treatment history of the home. We further conclude that the trial court properly instructed the jury on the duty of ordinary care, and the court did not err in denying Brewer–Russell's motions for directed verdict and j.n.o.v. on the issue of duty to disclose the termite treatment history of the Clevelands' home.[4]

## II.

¶ 29 Brewer–Russell next contends that the trial court erred in denying its motions for directed verdict and j.n.o.v. because the statute of limitations barred the Clevelands' claims for negligence and deceit. The trial court instructed the jury that the statute of limitations began to run two years from the time the Clevelands knew or should have known about the material termite histo-

---

**2.** Each of the aforementioned cases relied upon section 552 of the Second Restatement of Torts.

**3.** *Whitehead v. Rainey, Ross, Rice & Binns,* 2000 OK CIV APP 5, 997 P.2d 177; *Keel v. Titan Constr. Corp.,* 1981 OK 148, 639 P.2d 1228; *Hesser v. Cent. Nat'l Bank & Trust Co. of Enid,* 1998 OK 15, 956 P.2d 864; *Bradford Sec. Processing Servs., Inc., v. Plaza Bank & Trust,* 1982 OK 96, 653 P.2d 188; *Boren v. Thompson & Assocs.,* 2000 OK 3, 999 P.2d 438.

**4.** We note that, although Brewer–Russell effectively argues it would be tedious to search company records and ask company staff about the termite history of the home, Forehand admitted that the inspector had in his possession a file which contained the treatment history of the Clevelands' home. Therefore, it would not have required any great effort on the part of Brewer–Russell to disclose the treatment history.

ry of their home. *See* 12 O.S.2001 § 95. Brewer–Russell argues that the statute of limitations began to run on the date the Clevelands moved into their home. Brewer–Russell further argues that, to the extent the statute of limitations was tolled until the Clevelands knew or should have known of the alleged negligence and deceit, it began to run on December 26, 1991, the date Larry Cleveland removed the baseboard in the master bathroom and discovered active infestation.

¶ 30 Between August 1989 and the time the Clevelands purchased their home, Brewer–Russell treated the home for termites on five occasions. It is clear that the Clevelands had knowledge of the August 1989 treatment. Larry Cleveland testified that, when he and Brenda purchased their home, they received a copy of the August 1989 contract, which contained a graph showing treatment to a utility closet located outside of the home in the garage. He also testified that the language, "previously treated by Brewer–Russell," contained in the 1991 inspection report, could have meant treatment for any type of insect and that he assumed that Brewer–Russell had taken care of the problem. Larry further testified that he and Brenda did not find out about the remaining four treatments until 1995, during discovery.

¶ 31 Although witnesses for Brewer–Russell testified that the Clevelands had been told of the other four treatments prior to 1995, "it is within the province of the jury to determine the credibility of the witnesses and to decide the effect or weight to be given their testimony." *Walker v. St. Louis–San Francisco Ry.*, 1982 OK 25, ¶ 10, 646 P.2d 593, 597. The testimony by Larry Cleveland supports the jury's finding that the Clevelands did not know of the full treatment history until 1995. Because the Clevelands filed their last amended petition on October 3, 1996, it was filed within the two-year time frame.

¶ 32 Brewer–Russell argues that, because the Clevelands knew of the treatment to the closet in the garage in 1989 and because they discovered active infestation shortly after moving into the home, they were put on inquiry notice and would have known about the previous treatments if they had inquired.

In support of this argument, Brewer–Russell cites *Bankers' Mortgage Co. v. Leisure*, 1935 OK 342, 42 P.2d 863; *Knudson v. Weeks*, 394 F.Supp. 963 (W.D.Okla.1975); and *Reynolds v. Fowler Pest Control and Insulation, Inc.*, 479 So.2d 1185 (Ala.1985). Each of these cases, however, is distinguishable.

¶ 33 In *Leisure*, a suit for rescission based upon fraud, the plaintiffs purchased a bond without examining it closely. The Supreme Court held that the statute of limitations began to run when the plaintiffs received their bond. *Leisure*, 1935 OK 342, ¶ 10, 42 P.2d at 865. The Court reasoned that the plaintiffs had in their hands the means for discovering the fraud. *Id.* Unlike Brewer–Russell, however, the defendant in *Leisure* did not fail to disclose material information.

¶ 34 In *Knudson*, a homebuyer, whose home encroached upon an adjacent tract and into a utilities easement, sued the surveyor, who failed to disclose the encroachment. The Court determined that the homebuyer had constructive notice of the encroachment into the easement by the recorded plat and because she knew of the encroachment onto the adjacent tract when she bought the home. *Knudson*, 394 F.Supp. at 972. Brewer–Russell cites no authority requiring homebuyers to search the records of governmental agencies to obtain a home's termite treatment history.

¶ 35 In *Reynolds*, the plaintiffs sued a pest control company for fraud, arguing that at the time of the closing, the company represented in writing that the property was free of termite damage, when there was significant damage to the house. The Court held that, because the inspection form contained the language, "This is not a structural damage report. Neither is this a warranty as to the absence of wood destroying insects," the plaintiffs were not victims of misrepresentation. *Reynolds*, 479 So.2d at 1187.

¶ 36 Brewer–Russell argues that, because the inspection report here contained a disclaimer identical to the one in *Reynolds*, the Clevelands were placed on inquiry notice of the treatment history of their home. However, it is critical to note that, in *Reynolds*, the

inspection report noted, "Visible evidence of infestation was noted; proper control measures were performed." *Id.* Here, however, the 1991 inspection report noted, "No visible evidence of infestation from wood destroying insects was observed." Unlike the situation here, there was no allegation by the plaintiffs in *Reynolds* that the pest control company failed to disclose the full treatment history of the home. Moreover, although the Clevelands received a copy of the 1989 graph, the graph showed damage only to an outside utility closet. That would not have placed the Clevelands on notice of possible extensive damage inside the house. We find that the trial court did not err in denying Brewer–Rusell's motions for directed verdict and j.n.o.v. on the issue of the statute of limitations.

### III.

¶ 37 Brewer–Russell next contends that Larry Cleveland's causes of action for negligence and deceit were barred by the 1992 release entered between Larry and Brewer–Russell.[5] The agreement, drafted by Brewer–Russell, provided:

Brewer Russell, Exterminators did nothing wrong in our inspection and has been found blameless by the Department of agriculture [*sic*].

As a sign of good will and because we have a reputation for going the extra mile to be fair in our business dealings. We will issue a check in the amount of $250.00 (two hundred-fifty dollars) and retreat the property. We also will place this property on our yearly maintenance program for needed retreats only, no repairs are included.

This will release Brewer Russell, Exterminators from futher [*sic*] responsibility and litigation.

Brewer–Russell argues that the language of the release is broad enough to cover all of the Clevelands' claims. The Clevelands, on the other hand, argue that the language of the release is vague and does not address the

negligent omissions and misrepresentation which form the basis of this law suit.

¶ 38 A release intends a present abandonment of a known right or claim. *Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 56 n. 4 (3rd Cir.2001). A covenant not to sue, on the other hand, applies to future claims. *Id. See also Lisle v. Anderson*, 1916 OK 92, 159 P. 278, 282 (explaining that language promising a forbearance from asserting future claims constitutes a covenant not to sue, rather than a release). "Generally, rights of action originating after a release are not settled or barred by it, unless they are expressly embraced therein or fall within the fair import of the terms therein employed." *Haco Drilling Co. v. Hammer*, 1967 OK 71, ¶ 0, 426 P.2d 689, 690 (syl. no. 3 by the Court). *See also Antco, Inc. v. Dodge Fuel Corp.*, 209 W.Va. 644, 550 S.E.2d 622, 630 (2001); *Clark v. Columbia/HCA Info. Servs., Inc.*, 117 Nev. 468, 25 P.3d 215, 223–24 (2001); *Loberg v. Hallwood Realty Partners, L.P.*, 323 Ill. App.3d 936, 257 Ill.Dec. 394, 753 N.E.2d 1020, 1025 (2001); *Medtronic*, 247 F.3d at 58; *Capocy v. Kirtadze*, 183 F.3d 629, 632 (7th Cir.1999) (all explaining that a release will not be construed to include claims not contemplated or known by the parties at the time of its execution).

¶ 39 As we have discussed above, there is evidence in the record to support the jury's finding that the Clevelands did not know of the complete termite treatment history of their home until 1995. Therefore, the causes of action for negligence and deceit in failing to disclose the treatment history could not have been within Larry Cleveland's contemplation at the time he signed the release.

¶ 40 There are other contract principles which we must consider: intention of the parties and consideration. In *Kay Pharmacal Co. v. Dalious Construction Co.*, 1954 OK 306, ¶ 7, 276 P.2d 756, 758, the Supreme Court explained that, generally, "a release must be construed in the light of the circumstances surrounding the parties at the time the release was entered into." The

---

5. Brewer–Russell does not argue that Brenda Cleveland's claims were barred by the release because Brenda did not sign the agreement.

Court further explained that "release provisions are contractual, and the language of a contract (release) is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity." *Id.*

¶ 41 Here, it is not clear from the language of the release that the parties intended to include all possible future claims against Brewer–Russell. Because the release was drafted shortly after the first incident with termites in December 1991, the jury could have reasonably concluded that the language, "This will release Brewer–Russell, Exterminators from futher [*sic*] responsibility and litigation," meant that the release covered only a potential lawsuit arising from the December 1991 incident.

¶ 42 Moreover, the language of the release is ambiguous. Although the contract provided, "We will also place this property on our yearly maintenance program for needed retreats only,..." it did not state that the Clevelands' annual remittance of $60 would be a condition precedent to future performance by Brewer–Russell under the release. "If terms in the contract are ambiguous, it must be construed against the drafter of the contract." *McMinn v. City of Oklahoma City,* 1997 OK 154, ¶ 14, 952 P.2d 517, 522 (citing *Dismuke v. Cseh,* 1992 OK 50, ¶ 8, 830 P.2d 188, 190).

¶ 43 The Supreme Court addressed the issue of consideration in *Haco Drilling:*

[W]hile the plaintiffs are not permitted to vary the terms of a written agreement such as is here involved, the question of consideration is always an open one, and whether the consideration paid in the instant case was for damages already sustained or to exempt defendant from any future damages is not clear, and we are inclined to the opinion that before a contract such as is here relied upon can be upheld that it must be clearly shown that

the question of future damages, and the specific character and extent of such damages must have entered into the consideration and been within the contemplation of the parties at the time the contract was entered into, and that the consideration passing be adequate to cover such damages as may have been within the contemplation of the parties.

*Haco Drilling,* 1967 OK 71, ¶ 10, 426 P.2d at 694 (quoting *Gulf, C. & S.F. Ry. v. Anderson,* 1926 OK 315, ¶ 14, 250 P. 500, 502). The amount of consideration in the release in question does not reflect that the character and extent of future damages entered into the consideration and was within the contemplation of the parties at the time they executed the release. We will not reverse the trial court's denial of Brewer–Russell's motions for directed verdict and j.n.o.v. on this basis.[6]

## IV.

¶ 44 Brewer–Russell next contends that the treatment history of the Clevelands' home was not material because the Clevelands' real estate contract provided that they would purchase the home regardless of any termite infestation or damage. During the arguments on the motion for directed verdict, the trial court explained, "The issue is not that he [Larry Cleveland] wouldn't have bought the house. The issue today is that he wouldn't have had a house that needs to be bulldozed." The court further explained that the case involved causes of action against Brewer–Russell only; it did not involve causes of action related to the Clevelands' contract with the Eggemeyers.

¶ 45 We are in agreement with the trial court. The fact that the Clevelands may have been required to complete their real estate contract with the Eggemeyers even if they had known the full treatment

---

**6.** One of the cases cited by Brewer–Russell on this point is *Kay Pharmacal Co. v. Dalious Construction Co.,* 1954 OK 306, 276 P.2d 756, which involved a suit for damages resulting from faulty construction of a building. After the parties executed a written release, further damage occurred to the building. The Supreme Court determined that the language of the release was very broad and contemplated possible future claims in addi-

tion to those discussed by the parties. *Id.* at ¶ 6, 276 P.2d at 758. We decline to follow *Kay* because the language in the release in that case was much more broad in scope than the language in the release in this case. Moreover, *Kay* is distinguishable in that it did not involve a claim that the building contractor had failed to disclose pertinent history pertaining to the building.

history of the home is not relevant to the issue of whether they could sue Brewer–Russell for damages when it failed to disclose the full treatment history. The trial court instructed the jury, "A fact is material if a reasonably careful person under the circumstances would attach importance to it in determining his or her course of action." *See* OUJI 18.4. The termite treatment history was indeed material because a reasonably careful person would attach importance to the termite history of a prospective home. Forehand's own testimony, in addition to that of Thomas Brown, the Brewer–Russell agent who inspected the Clevelands' home, acknowledged the importance of such information. We conclude that the trial court did not err in denying Brewer–Russell's motions for directed verdict and j.n.o.v. on the issue of failure of the element of materiality.

### V.

¶ 46 Brewer–Russell next contends that its motion for directed verdict should have been granted because the Clevelands failed to prove compensable property damages. Citing *Orkin Exterminating Co. v. Durden,* 189 Ga.App. 479, 376 S.E.2d 376 (1988), Brewer–Russell argues that the Clevelands should have submitted evidence of damages that existed in October 1991, when the "alleged" breach occurred, rather than submitting evidence of damages which existed in May 2000. We disagree and find *Orkin* unpersuasive because that case involved recovery of costs to repair, whereas, in this case, the Clevelands sought permanent damages, which are assessed differently.

¶ 47 In a negligence action, plaintiffs are entitled to recover those damages which are forseeable and naturally flow from the defendant's negligent acts. *Stroud v. Arthur Andersen & Co.,* 2001 OK 76, ¶ 14, 37 P.3d 783, 789. When damages to real property are "permanent in nature, the measure of damage is the difference between the actual value immediately before and immediately after the damage is sustained." *Keck v. Bruster,* 1962 OK 35, ¶ 7, 368 P.2d 1003, 1005 (quoting *ABC Constr. Co. of Okla. v.*

*Thomas,* 1959 OK 231, ¶ 4, 347 P.2d 649, 651).

¶ 48 The Clevelands' damages expert, Daniel Simon, testified that the Clevelands' home has no value, due to extensive termite damage. Simon also testified that he believed the house could not be sold and that it would not be cost effective to repair it. He further testified that, absent the extensive termite damage, the Clevelands' home would have a fair market value of $98,000 and that the home has a salvage value of $25,000 (a residual value of $31,900—which includes the lot, swimming pool, and possibly the slab—minus the cost to tear the home down). The jury awarded the Clevelands' $73,000. It was within the jury's province to determine the value of the home. *Ins. Co. of State of Pa. v. Smith,* 435 F.2d 1029, 1031 (10th Cir. 1971); *Poteete v. MFA Mut. Ins. Co.,* 1974 OK 110, ¶ 18, 527 P.2d 18, 21.

¶ 49 The fact that the Clevelands did not provide evidence of damages existing in 1991 does not make the jury's award erroneous. It appears from the record that the jury determined that the Clevelands knew or should have known of the complete termite history of their home beginning in 1995. The Clevelands amended their petition for a second time in 1996 and alleged negligence on the part of Brewer–Russell in failing to disclose the complete termite treatment history. Their home sustained loss from termite damage up to the point of trial. Given the extensive structural damage caused by termites, the jury could have concluded that most of the damage occurred after Brewer–Russell submitted the wood infestation report. We note, as did the Supreme Court in *Keck* and *Thomas,* that Brewer–Russell did not provide any evidence to contradict that of the Clevelands on the issue of damages. *See Keck,* 1962 OK 35, ¶ 8, 368 P.2d at 1005; *Thomas,* 1959 OK 231, ¶ 8, 347 P.2d at 652.

¶ 50 We also find guidance in *Horsch v. Terminix Int'l Co.,* 19 Kan.App.2d 134, 865 P.2d 1044 (1993), which involved an action against a termite company for negligent inspection. The Kansas court explained:

> The rules for measuring damages are subordinate to the aim of making good the injury done. The determination of dam-

ages rests in good sense rather than in a mechanical application of a single formula. The purpose of awarding damages is to make the injured party whole by restoring that party to the position he or she was in prior to the injury.

*Id.* at 1049 (citations omitted). We find no error on the part of the trial court in denying the motion for directed verdict on the issue of damages.[7]

## VI.

¶ 51 Brewer–Russell next contends that the trial court erred in allowing the jury to consider testimony by Brenda Cleveland that she experienced emotional distress as a result of her experiences with the termites in her home. Brewer–Russell argues that, without evidence of physical injury, Brenda's emotional distress claim was not compensable.

¶ 52 Brenda's emotional distress claim was a part of the Clevelands' action for deceit. However, the majority of the cases cited by Brewer–Russell address emotional distress which is negligently inflicted.[8] Thus, the cases are inapposite. This Court has explained that "[e]motional distress as a consequence of an intentional tort is distinguishable from distress resulting from breach of contract or negligence, which requires a showing of physical injury." *Coble v. Bowers*, 1990 OK CIV APP 109, ¶ 19, 809 P.2d 69, 73 (citing *Ellington v. Coca Cola Bottling Co.*, 1986 OK 11, 717 P.2d 109; *Seidenbach's, Inc. v. Williams*, 1961 OK 77, 361 P.2d 185). We also explained in *Coble* that "emotional distress caused by a willful, actionable tort is recoverable, even absent physical injury, if it is the natural and probable consequence of the tortious act." *Id.*

¶ 53 Emotional distress is undoubtedly a natural and probable consequence of purchasing and living in a home which, unbeknownst to the purchaser, has been extensively damaged by termites and has extensive live infestation of termites. Brenda's testimony concerning her experiences with the termites in the home and the way in which that has affected her, was sufficient to allow the issue of emotional distress to go to the jury. We, therefore, find no error on the part of the trial court in denying Brewer–Russell's motions for directed verdict and j.n.o.v. on this issue.

## VII.

¶ 54 Finally, Brewer–Russell argues that, pursuant to 12 O.S.2001 § 936, it was entitled to attorney fees because the trial court rendered judgment in favor of Brewer–Russell on the Clevelands' breach of contract and breach of oral contract claims. Thus, Brewer–Russell argues the trial court erred in not awarding it attorney fees as a prevailing party on two issues.

¶ 55 In *Quapaw Co. v. Varnell*, 1977 OK CIV APP 19, 566 P.2d 164, only the plaintiff received a money judgment. This Court explained that "there can be only one prevailing party, and one attorney's fee." *Id.* at ¶ 21, 566 P.2d at 167. Although each party may win some of the issues, the prevailing party is the party in whose favor the verdict compels the judgment. *Id.* at ¶ 17, 566 P.2d at 167 (quoting *Ozias v. Haley*, 141 Mo.App. 637, 125 S.W. 556 (1910)).

¶ 56 A division of this Court disagreed with the application of *Quapaw* in *Stites v. Duit Construction Co.*, 1999 OK CIV APP 113, 992 P.2d 913. There, both the plaintiff and defendant received money judgments in the trial court. The trial court offset the defendant's recovery for restitution against the judgment which the plaintiff received against the defendant. The plaintiff argued on appeal that, because the trial court offset the defendant's recovery, the defendant was

---

7. The Clevelands presented evidence that their home had no value due to termite damage and that they paid $73,000 for the home; thus, the jury's damage award placed them in the position they were in prior to the injury.

8. *See Kraszewski v. Baptist Med. Ctr.*, 1996 OK 141, 916 P.2d 241; *Ellington v. Coca Cola Bottling Co.*, 1986 OK 11, 717 P.2d 109; *Van Hoy v. Okla. Coca–Cola Bottling Co.*, 1951 OK 231, 235 P.2d 948; *Richardson v. J.C. Penney Co.*, 1982 OK CIV APP 35, 649 P.2d 565; *McMeakin v. Roofing & Sheet Metal Supply Co.*, 1990 OK CIV APP 101, 807 P.2d 288.

not a prevailing party and was not entitled to costs. The Court of Civil Appeals concluded that, because the defendant obtained an affirmative judgment, he was a prevailing party. The Court reasoned, "The action of the trial court in allowing [the plaintiff] to offset his liability on [the defendant's] judgment against [the defendant's] liability to him on his judgment did not alter the reality of [the defendant's] judgment." *Id.* at ¶ 16, 992 P.2d at 917.

¶ 57 The Court in *Stites* relied upon *Midwest Livestock Systems v. Lashley,* 1998 OK 68, 967 P.2d 1197, and *Welling v. American Roofing & Sheet Metal Co.,* 1980 OK 131, 617 P.2d 206. In each of those cases, the plaintiffs and defendants both received money judgments, and the Supreme Court held that both were prevailing parties. *See Lashley,* 1998 OK 68, ¶ 9, 967 P.2d at 1199; *Welling,* 1980 OK 131, ¶ 17, 617 P.2d at 210. It is critical to note that, in *Lashley,* the Court pointed out that *Quapaw* was not applicable because in that case, only the plaintiff recovered a money judgment. *Lashley,* 1998 OK 68, ¶ 6, 967 P.2d at 1199. In this case, only the Clevelands received a money judgment. Therefore, they were the only prevailing party, and Brewer–Russell is not entitled to attorney fees.

## CONCLUSION

¶ 58 We conclude that the trial court did not err in denying Brewer–Russell's motions for directed verdict and j.n.o.v. We further conclude that the trial court did not abuse its discretion in denying Brewer–Russell's motion for new trial.

¶ 59 AFFIRMED.

RAPP, J., and GOODMAN, J., concur.