2004 OK CIV APP 2

**Rae WORSHAM, Individually and as Administratrix of the Estate of Michael Worsham, and The Estate of Michael Worsham, Plaintiffs/Appellants,**

v.

**Jeff NIX and Scott Scroggs d/b/a Nix & Scroggs Law Firm, Defendants/Appellees.**

**No. 98,041.**

Court of Civil Appeals of Oklahoma, Division No. 2.

June 3, 2003.

Rehearing Denied June 30, 2003.

Certiorari Denied Dec. 15, 2003.

Bill V. Wilkinson, Wilkinson Law Firm, Tulsa, OK, for Plaintiffs/Appellants.

Jody R. Nathan, Joseph R. Farris, Kristin Blue Fisher, Feldman Franden Woodard & Farris, Tulsa, OK, for Defendants/Appellees.

Opinion by JOE C. TAYLOR, Presiding Judge:

¶1 In this action for legal malpractice, Plaintiff, Rae Worsham,[1] appeals the summary judgment granted to Defendants, Jeff

---

1. Plaintiffs Rae Worsham and the Estate of Michael Worsham, are referred to, collectively, as Plaintiff.

Nix and Scott Scroggs d/b/a Nix & Scroggs Law Firm. The issues on appeal are (1) whether questions of fact preclude summary judgment on Plaintiff's claims of legal negligence, breach of contract, and fraud; (2) whether Defendants can be held liable for Michael Worsham's suicide; and (3) whether Defendants can be held liable for emotional distress damages. Having reviewed the record and applicable law, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

¶ 2 For purposes of reviewing the summary judgment granted to Defendants, we accept as true the following facts: In January 1998, Plaintiff and her husband, Michael Worsham, hired Defendant Scott Scroggs, of the Nix & Scroggs law firm, to stop harassment that Michael was suffering at his employment with Public Service Company of Oklahoma (PSO). Scroggs accepted a non-refundable $650 retainer from Plaintiff and Michael and advised them that he would warn PSO to stop the harassment and would file a lawsuit against PSO. Scroggs knew that Michael was suffering from mental and emotional problems as a result of the harassment. Plaintiff and Michael thought the harassment would end if Scroggs filed the lawsuit. Although he advised Plaintiff and Michael that he had contacted PSO and filed a lawsuit against it, Scroggs did neither. The workplace harassment continued unabated and became even worse. On May 29, 1998, without knowledge that Scroggs had not contacted PSO or filed a lawsuit on his behalf, Michael committed suicide because "the stress and hopelessness experienced at work ... caused him to have mental illness and delirium which resulted in an uncontrollable urge to commit suicide." [2]

¶ 3 Plaintiff filed this lawsuit against Defendants, ultimately asserting three causes of action: (1) legal malpractice, seeking actual and punitive damages for gross negligence in failing to perform legal services; (2) fraud, seeking actual and punitive damages for mis-

representations made about contacting PSO and filing the lawsuit; and (3) breach of contract, seeking actual damages including return of the non-refundable retainer.[3] It became clear during the pretrial motion stage that, in addition to return of the non-refundable retainer, Plaintiff sought actual and punitive damages for wrongful death, laying the blame for Michael's suicide on Defendants. After two motions for summary judgment and a motion to reconsider, the trial court granted summary judgment to Defendants and Plaintiff appeals.

## STANDARD OF REVIEW

■ ¶ 4 "Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law." *Allen v. Lynn Hickey Dodge, Inc.,* 2001 OK 93, ¶ 5, 39 P.3d 781, 783. The summary judgment process "is a search for undisputed material facts that would support but a single inference which favors the movant." *Shamblin v. Beasley,* 1998 OK 88, ¶ 9, 967 P.2d 1200, 1208.

■ ¶ 5 Our standard of review on an appeal from a summary judgment is clear. Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision is purely legal: whether one party is entitled to judgment as a matter of law because there are no material disputed facts. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Therefore, our standard of review on appeal is de novo. *Id.; see also Copeland v. The Lodge Enter., Inc.,* 2000 OK 36, ¶ 8, 4 P.3d 695, 699. "Like a trial court, an appellate court examines the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact and, as in the trial court, all inferences and conclusions arising from the evidentiary materials are viewed in a light most favorable to the non-moving party." *Cranford v. Bartlett,* 2001 OK 47, ¶ 2, 25 P.3d 918, 920 (citation omitted).

---

2. See the affidavit of John William Cleary, Ph.D, a psychologist who treated Michael, beginning in April 1998.

3. These are the causes of action included in Plaintiff's amended petition.

QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF LEGAL NEGLIGENCE, BREACH OF CONTRACT, AND FRAUD

¶ 6 The plaintiff in a legal negligence action must prove the existence of an attorney-client relationship, a breach of the attorney's duty to the client, and a causal nexus between the lawyer's negligence and resulting injury. *Manley v. Brown*, 1999 OK 79, ¶ 8, 989 P.2d 448, 452. As to the first element, it is undisputed that Michael retained Scroggs to represent him in an effort to stop the harassment at work.

¶ 7 As to the second element, Plaintiff presented evidence that Scroggs breached his duty to "exercise ordinary professional skill and diligence" in representing Michael. *Leak–Gilbert v. Fahle*, 2002 OK 66, ¶ 11, 55 P.3d 1054, 1056. Plaintiff presented evidence that Scroggs did very little in his representation of Michael. Although Scroggs testified he called PSO's human resources department, PSO has no record of such a call and denies having received such a call. Furthermore, even if PSO's human resources director never returned such a call, Scroggs made no further effort to contact the human resources department. Scroggs also admitted that he did not personally file the lawsuit against PSO; rather, he relied on a law clerk, and blamed the law clerk for not accomplishing the task. Nevertheless, Scroggs made no effort to confirm the filing of the lawsuit and never questioned why PSO had not answered the petition. In proceedings against Scroggs by the Oklahoma Bar Association, the Oklahoma Supreme Court determined "that the evidence is clear and convincing that [Scroggs] represented ... that he instructed law clerks to file the petitions, when he did not do so." *State ex rel. Oklahoma Bar Ass'n v. Scroggs*, 2003 OK 21, ¶ 56, 70 P.3d 821, 833. Thus, a reasonable person could conclude that Defendant Scroggs breached his duty to Michael.

¶ 8 Plaintiff also presented evidence of damages resulting from the breach. In particular, Plaintiff presented evidence that she and Michael paid court costs and a non-refundable retainer to Scroggs. The record does not reflect that this money has been returned to Plaintiff. Furthermore, as discussed subsequently, Plaintiff has presented evidence to raise a question of fact as to whether emotional distress damages may be recovered. Thus, Defendants are not entitled to summary judgment on Plaintiff's claim of legal negligence.

¶ 9 Plaintiff also seeks damages for breach of contract. It is clear from the evidence that Michael and Scroggs entered into a contract. The same evidence that Plaintiff presented regarding legal negligence raises a question of fact as to whether Scroggs breached that contract. Moreover, as noted above, the record does not reflect that Defendants have ever returned the court costs and non-refundable retainer that were paid to Scroggs. Thus, Defendants are not entitled to summary judgment on Plaintiff's claim of breach of contract.

¶ 10 Plaintiff's third cause of action is based on fraud. "The elements of common law fraud are: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his/her own detriment." *Rogers v. Meiser*, 2003 OK 6, ¶ 17, 68 P.3d 967, 977. Plaintiff presented evidence that Scroggs falsely represented to them that he had contacted PSO and had filed a lawsuit. As noted above, PSO denies having received a phone call from Scroggs. Furthermore, in the bar proceedings against Scroggs, the Supreme Court determined that Scroggs' representation that he instructed a law clerk to file the lawsuit, when he had not done so, is "a deliberate misrepresentation of facts." Thus, there is evidence that, at the very least, Scroggs recklessly made false representations without knowledge of their truth. As to the element of intent, it can be inferred that Scroggs intended Plaintiff and Michael to rely on his representations, at least to the extent that they would not seek other legal counsel. It can also be inferred from the evidence that Plaintiff and Michael relied on the misrepresentations, again, at least to the extent of not seeking other legal counsel.

Furthermore, Michael informed his supervisor that he had hired a lawyer and a lawsuit had been or was going to be filed to stop the harassment. Finally, as to the issue of damages, it can be inferred from the evidence that, had Plaintiff and Michael known of the falsity of Scroggs' representations, they could have hired another lawyer. Also, as will be further discussed, Plaintiff may recover for emotional distress damages suffered as a result of fraud by Scroggs. Therefore, as with the claims of legal negligence and breach of contract, Defendants are not entitled to summary judgment on Plaintiff's fraud claim.

### DEFENDANTS CANNOT BE HELD LIABLE FOR MICHAEL WORSHAM'S SUICIDE

¶ 11 We turn now to the damages to which Plaintiff claims she is entitled. Plaintiff first claims she is entitled to recover for Michael's death, which she alleges was brought on by Scroggs' failure to act on Michael's behalf. According to Plaintiff, Michael believed the lawsuit had been filed and the harassment would stop because of it. Plaintiff further asserts that, when the harassment did not stop, Michael became more upset, lost hope that anything could end the harassment, and therefore committed suicide. Thus, Plaintiff seeks damages for Michael's wrongful death.

¶ 12 As previously noted, the plaintiff in a legal negligence action must prove a causal nexus between the attorney's breach of duty and the injury. *Manley*, 1999 OK 79, ¶ 8, 989 P.2d at 452. The extent of the duty of care owed by a lawyer to his client is "a question of law described as the total of policy considerations which lead to the conclusion that the plaintiff is entitled to protection." *Leak–Gilbert*, 2002 OK 66, ¶ 11, 55 P.3d at 1056. "Of such considerations the most important in establishing duty is foreseeability." *Wofford v. Eastern State Hosp.*, 1990 OK 77, ¶ 11, 795 P.2d 516, 519. "In determining whether to impose a duty, we must consider the risk, foreseeability and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury

and the consequences of placing that burden on the actor." *Myers v. Lashley*, 2002 OK 14, ¶ 6, 44 P.3d 553, 568 (Boudreau, J., concurring in result). "If a duty exists, the trier of fact then determines whether a violation of that duty has occurred." *Leak–Gilbert*, 2002 OK 66, ¶ 11, 55 P.3d at 1057.

¶ 13 Generally, suicide is considered to be "an intervening force which breaks the line of causation from the wrongful act to the death, and therefore the wrongful act does not render the defendant civilly liable." *Runyon v. Reid*, 1973 OK 25, ¶ 37, 510 P.2d 943, 949. This rule is based on the underlying rule that " 'if the negligence complained of merely furnished a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury.' " *Id.* at ¶ 34, 510 P.2d at 948 (quoting *Hunt v. Firestone Tire & Rubber Co.*, 1968 OK 184, 448 P.2d 1018). "However, if the intervening cause is foreseeable, then the chain of causation extending from the original act to the injury is not broken by the independent intervening agency, and the original wrongful act will be treated as the proximate cause of the injury." *Id.* at ¶ 35, 510 P.2d at 948.

¶ 14 Courts have found suicides foreseeable where the suicidal individual and the defendant had a special relationship, *e.g.*, the relationship between a psychiatrist or psychologist and patient, *cf.*, *id.* at ¶¶ 50–54, 510 P.2d at 950, or between a prison or jail and an inmate, *cf.*, *McLaughlin v. Sullivan*, 123 N.H. 335, 461 A.2d 123, 125 (1983). In *Runyon*, the Oklahoma Supreme Court considered the potential liability of a physician, psychiatrist, and psychiatric hospital for the death of a patient who had overdosed on prescription medications. The Court stated that the defendants could only be liable if "a reasonably skillful psychiatrist using customary methods would have regarded decedent as a suicidal risk who should not have been given a large quantity of sleeping pills at any one time." 1973 OK 25, ¶ 62, 510 P.2d at 951. However, the plaintiff did not allege that the decedent exhibited suicidal tendencies. Therefore, "a reasonably skillful psychiatrist would not have regarded decedent

as a suicidal risk who should not have been allowed to possess large quantities of sleeping pills." *Id.* at ¶ 63, 510 P.2d at 951.

¶ 15 The Oklahoma Supreme Court, like most other appellate courts, has not had occasion to address the issue of the potential liability of an attorney for the allegedly foreseeable suicidal death of a client caused by the attorney's malpractice. The New Hampshire Supreme Court, however, rejected such an argument in *McLaughlin v. Sullivan,* 123 N.H. 335, 461 A.2d 123 (1983). The decedent in *McLaughlin* committed suicide in his jail cell after being found guilty and sentenced to prison. The personal representative of the decedent's estate sued his attorney, asserting that, as a result of the attorney's malpractice, the decedent committed suicide after being wrongfully convicted and incarcerated. In rejecting the personal representative's assertion, the New Hampshire Supreme Court noted that attorneys do not enjoy sufficient similarities with defendants such as mental health care providers, because an attorney does not have physical custody or control of a client or the professional skills to "diagnose the psychological state of a client, or to make competent judgments regarding the weight of, or appropriate responses to, any psychological evaluations which may have been made by others in the course of the sentencing process." *Id.* at 126. Furthermore, the court refused to create a rule "that a lawyer's duty of representation extends to protecting a client from his suicidal tendencies." *Id.* at 127. The court reached this conclusion by analyzing "whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred." *Id.* (internal quotation marks omitted).

¶ 16 The New Hampshire court found "the connection between negligence in the practice of law, and the harm which befell the decedent in this case to be simply too attenuated to impose legal liability" on the defendant attorney, and a client's suicide is not "a hazard against which a lawyer can fairly be said to have the duty to guard." *Id.* The court also considered that "[t]o hold otherwise would undoubtedly open the floodgates of unexpected and inequitable liability on the part of attorneys" and would discourage attorneys "from representing what may be a sizeable number of depressed or unstable criminal defendants, in the fear that it would later be alleged that one such client committed suicide out of despondence over a 'wrongful' conviction based on inadequate representation." *Id.* at 127–28.

¶ 17 Relying on *McLaughlin,* a Pennsylvania Superior Court reached the same conclusion. In *McPeake v. Cannon,* 381 Pa.Super. 227, 553 A.2d 439 (1989), the decedent, who had just been found guilty of several crimes, jumped through a closed fifth floor window of the courtroom and killed himself. The representative of his estate filed a legal malpractice action against the decedent's lawyer, alleging that the attorney's negligent representation caused the decedent's suicide. In rejecting the claim, the court first noted the general rule that a defendant does not have a duty to prevent a harm that is not a reasonably foreseeable result of negligent conduct. The court then held as follows:

> The duty of an attorney in a criminal case is to provide competent legal representation to his client. If an attorney does not provide adequate representation, he has breached his duty and is liable to his client for the resulting injuries. An attorney; however, is responsible only for the loss proximately caused his client by his negligence. Suicide has been recognized as an act that is so extraordinary as not to be reasonably foreseeable and thus courts have held that it is not the type of harm that can proximately result from ordinary negligence. The exceptions to this rule usually involve defendants with some knowledge or duty, such as institutions, hospitals, and mental health professionals. An attorney, unlike a hospital or mental health professionals, has no special expertise or professional training, that would enable him either to foresee that a client is likely to commit suicide, or, if he could make that determination, to adopt a response to the threat.... Because an attorney does not possess the ability either to perceive that a client is likely to commit suicide, or to prevent the suicide, we will not impose liability upon him for failing to

prevent a harm that is not a foreseeable result of prior negligent conduct. *Id.* at 442–43. The court concluded that "an attorney's duty to provide adequate representation does not encompass the duty to foresee and protect a client from his own possible suicidal tendencies." *Id.* at 443.

¶ 18 We agree that a client's suicide is typically not the type of foreseeable risk against which an attorney should have to guard. Here, the facts, even viewed in a light most favorable to Plaintiff, lead to one reasonable conclusion: Michael's suicide was not a foreseeable event to Defendants. Shortly before he committed suicide, Michael began seeing psychiatrist Katherine Klaasen, M.D., to deal with stress caused by the workplace harassment. Dr. Klaasen testified that, although Michael suffered from moderate depression, he denied having "suicidal ideation." When asked if Michael was believable, Dr. Klaasen testified she "felt he was being cooperative, forthcoming" and that his treatment was "off to a good start." Dr. Klaasen also identified positive factors or "strengths," such as previous job satisfaction, a 23–year marriage, and hobbies, that indicated Michael was not a candidate for suicide.

¶ 19 At the time he was receiving treatment from Dr. Klaasen, Michael was also being treated by John William Cleary, Ph.D. Although Dr. Cleary stated in an affidavit that "the stress and hopelessness experienced at work by Michael Worsham caused him to have mental illness and delirium which resulted in an uncontrollable urge to commit suicide," Dr. Cleary did not indicate that Michael's suicide was foreseeable to Dr. Cleary or to anyone else. Moreover, there is nothing in the record to indicate that Michael's suicide was foreseeable to his family, the people closest to him.

¶ 20 Although the evidence raises the inference that Scroggs knew Michael was depressed and anxious because of the workplace harassment, there is no evidence to support an inference that Scroggs should have foreseen Michael's suicide. To the contrary, Scroggs was less equipped, by training and experience, than Drs. Klaasen and Cleary to foresee Michael's suicide. He also

was less likely to foresee Michael's suicide than Michael's own family. The only reasonable inference to be drawn from this evidence is that "a reasonably skillful psychiatrist would not have regarded [Michael] as a suicidal risk." *Runyon,* 1973 OK 25, ¶ 63, 510 P.2d 943, 951. Because the suicide could not have been foreseen by Scroggs, liability cannot be imposed on Defendants under the rule that, if an intervening cause, such as suicide, is foreseeable, then the chain of causation is not broken and the original wrongful act will be treated as the proximate cause of the injury.

¶ 21 Plaintiff argues, alternatively, that Defendants should be held liable under the rule set out in § 455 of the Restatement (Second) of Torts (1965), which provides as follows:

> If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity
>
> (a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or
>
> (b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

The *McLaughlin* court considered the circumstances discussed by this rule in the context of an attorney's potential liability for the suicide of a client. The court first noted that recovery in tort is typically allowed only "where the defendant has caused a severe physical injury to the victim which leads to extraordinary mental incapacity resulting in suicide, . . . or where the defendant intentionally or maliciously has tormented the victim into a suicidal state. . . ." *McLaughlin,* 461 A.2d at 125 (citations omitted). The court concluded that, "[e]ssential and central to such cases is either the actual infliction of severe bodily injury by the defendant, or the willful infliction of extreme emotional distress, *neither of which could ever be viewed as characterizing the negligent performance of the practice of law.*" *Id.* (emphasis added).

¶ 22 Under § 455, "a plaintiff must show more than that the alleged negligent incident started a chain of circumstances that led to suicide." *District of Columbia v. Peters*, 527 A.2d 1269, 1276 (D.C.Ct.App.1987). The plaintiff must show that the defendant's action produced "an abnormal mental condition which results in an uncontrollable impulse to commit suicide." *Id.* It is not enough to show that a plaintiff's depression was a "powerful contributor" to the decedent's "feeling of hopelessness and helplessness." *Id.* at 1277. The latter facts "are a far cry" from showing that a defendant's action caused an irresistible or uncontrollable impulse to commit suicide. *Id.*

¶ 23 Here, the only reasonable inference to be drawn from the evidence presented to the trial court is that Scroggs' failure to contact PSO or file a lawsuit did not bring about delirium or insanity in Michael. The evidence shows that, by the time Plaintiff and Michael retained Scroggs to represent them, the workplace harassment had been occurring for approximately seven years, and Michael had been taking medication to deal with depression and anxiety caused by the harassment. Moreover, Michael did not know, at the time of his suicide, that Scroggs had failed to contact PSO or file the lawsuit. As for the medical evidence, Dr. Klaasen stated that the workplace harassment was the major stressor contributing to Michael's mood and anxiety disorders. According to Dr. Klaasen, Michael felt hopelessness because he had reported the harassment to his supervisor, yet they would do nothing to stop it. Dr. Cleary also opined that "the stress and hopelessness experienced at work by Michael Worsham caused him to have mental illness and delirium which resulted in an uncontrollable urge to commit suicide on May 29, 1998." Absent from both Dr. Klaasen's and Dr. Cleary's assessments is any statement that Scroggs' action in not contacting PSO or filing the lawsuit caused Michael to have mental illness or delirium.

¶ 24 We can only conclude, based on the evidence and the inferences to be drawn from that evidence, that Michael's suicide was not foreseeable and Scroggs' alleged conduct did not, as required by the rule of § 455, bring about delirium or insanity in Michael. Therefore, Defendants cannot be held liable for Michael's suicide.

## DEFENDANTS MAY BE HELD LIABLE FOR EMOTIONAL DISTRESS DAMAGES

¶ 25 Plaintiff also seeks damages for emotional distress caused by Defendants' representation. No published Oklahoma appellate decisions have addressed the availability of emotional distress damages in a legal malpractice case, specifically. However, decisions in other cases provide guidance. Emotional distress damages have been allowed in a negligence action when accompanied by a physical injury—"the plaintiff may recover for mental anguish where it is caused by physical suffering and may also recover for mental anguish which inflicts physical suffering." *Ellington v. Coca Cola Bottling Co.*, 1986 OK 11, ¶ 8, 717 P.2d 109, 111; *see also Brady v. Criswell Funeral Home, Inc.*, 1996 OK CIV APP 1, 916 P.2d 269. Moreover, in the absence of a physical injury, "emotional distress caused by a willful, actionable tort is recoverable ... if it is the natural and probable consequence of the tortious act." *Cleveland v. Dyn–A–Mite Pest Control, Inc.*, 2002 OK CIV APP 95, ¶ 52, 57 P.3d 119, 131 (*quoting Coble v. Bowers*, 1990 OK CIV APP 109, ¶ 19, 809 P.2d 69, 73) (damages allowed for emotional distress caused by deceit). Under this theory, a plaintiff may recover damages for emotional distress by showing "a willful wrong of such a character that mental suffering is recognized as an ordinary, natural and proximate result of such a wrong." *Dean v. Chapman*, 1976 OK 153, ¶ 20, 556 P.2d 257, 260; *see also Mashunkashey v. Mashunkashey*, 1941 OK 113, 113 P.2d 190.

¶ 26 Courts in other jurisdictions have utilized the latter theory to recognize that clients may recover emotional distress damages from attorneys. In *Lickteig v. Alderson, Ondov, Leonard & Sween*, 556 N.W.2d 557, 561–62 (Minn.1996), the Minnesota Supreme Court denied a client's request for emotional distress damages in a claim for legal negligence. However, relying on the rule that emotional distress damages may be

recovered from a defendant whose conduct is willful, wanton, or malicious, the Minnesota court acknowledged that "cases may arise where an attorney acts so egregiously that emotional distress damages may be appropriate." In *Snyder v. Baumecker*, 708 F.Supp. 1451 (D.N.J.1989), a federal district court recognized that emotional distress damages may be recoverable where the circumstances surrounding an attorney's representation are "egregious or extraordinary." *Id.* at 1464 (citing *Gautam v. DeLuca*, 215 N.J.Super. 388, 521 A.2d 1343 (1987)). *See also Wehringer v. Powers & Hall, P.C.*, 874 F.Supp. 425 (D.Mass.1995) (emotional distress damages may be recoverable in exceptional circumstances where an attorney's conduct is reckless and the resulting damage is foreseeable); *cf. Lawrence v. Grinde*, 534 N.W.2d 414, 421 (Iowa 1995) (emotional distress damages may be recoverable in a legal negligence action if the legal representation is "so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering").

¶ 27 Here, Plaintiff presented evidence that Plaintiff and Michael retained Scroggs to end the workplace harassment, which Scroggs knew was taking an emotional toll on Michael. Scroggs also was aware that the emotional distress had become so severe that Michael had been forced to take time off from work and obtain mental health services. Yet, according to Plaintiff's evidence,

Scroggs did little to nothing to represent Michael as he had promised. Indeed, as discussed previously, Plaintiff has raised the factual issue of whether Scroggs committed fraud when he misrepresented that he had contacted PSO and had filed a lawsuit. Under these facts, a jury could also reasonably infer that emotional distress was a natural and probable consequence of Scroggs' action. Therefore, Plaintiff's fraud cause of action may support recovery of emotional distress damages. *See Cleveland*, 2002 OK CIV APP 95, 57 P.3d 119 (deceit would support a claim for emotional distress damages); *Coble*, 1990 OK CIV APP 109, 809 P.2d 69 (cause of action for fraud would support claim for emotional distress damages); *Mashunkashey*, 1941 OK 113, 113 P.2d 190 (fraud in inducing one to enter into a bigamous marriage would support a claim for emotional distress damages).

¶ 28 Moreover, Plaintiff has raised the factual question of whether Scroggs committed legal negligence. If Plaintiff can further show that she or Michael suffered foreseeable emotional distress as a result of that negligence, and that the emotional distress caused physical injury, damages may be recoverable for the emotional distress. *Ellington*, 1986 OK 11, ¶ 8, 717 P.2d at 111.[4]

## CONCLUSION

¶ 29 Questions of fact preclude summary judgment on Plaintiff's claims of legal negligence, breach of contract, and fraud. Be-

---

4. For example, upon seeing what she believed to be a worm in a bottle of Coca–Cola, the plaintiff in *Ellington* became physically ill; the illness persisted, "resulting in dehydration which triggered a kidney infection and other physical irregularities such as diarrhea, fever and nausea." Although Plaintiff did not plead a cause of action for intentional infliction of emotional distress, she suggests in response to Defendants' second motion for summary judgment that she is entitled to recover emotional distress damages for intentional acts by Scroggs. The test under this theory of recovery is whether the alleged tortfeasor's conduct "has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress," *i.e.*, whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to ex-

claim, 'Outrageous.' " *Miller v. Miller*, 1998 OK 24, ¶ 34, 956 P.2d 887, 901. To ensure that only valid claims reach the jury, the trial court performs the role of "gatekeeper" to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to permit recovery. *Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 8, 49 P.3d 732, 735.

Although the trial court did not specifically address the theory of intentional infliction of emotional distress, we find that it is not a viable theory of recovery under the facts of this case. Even accepting as true that Defendant Scroggs did not file the lawsuit and did not otherwise adequately represent Michael, it cannot be said that these actions so totally exceeded the bounds of acceptable action that an average member of the community would exclaim, "outrageous."

cause Michael's suicide was not foreseeable and Scroggs' alleged negligence did not bring about delirium or insanity, Defendants cannot be held liable for Michael's suicide. However, questions of fact preclude summary judgment on Plaintiff's quest for emotional distress damages based on the theories of fraud or negligence.

¶ 30 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

COLBERT, V.C.J., and STUBBLEFIELD, J., concur.