2006 OK CIV APP 78

Mike WARREN and Judy Warren, and Angie Miller, natural mother and legal custodian of Cameron Normore, a minor child, Plaintiffs/Appellants,

v.

UNITED STATES SPECIALTY SPORTS ASSOCIATION, Defendant/Appellee.

No. 102,048.

Court of Civil Appeals of Oklahoma, Division No. 2.

May 30, 2006.

Steven M. Ditto, Oklahoma City, OK, for Plaintiffs/Appellants.

Bryan J. Wells, Billy M. Lewis, Conner & Winters, LLP, Oklahoma City, OK, for Defendant/Appellee.

Opinion by JANE P. WISEMAN, Presiding Judge.

¶ 1 Mike Warren, Judy Warren, and Angie Miller, next friend of Cameron Normore, a minor child, (collectively, Plaintiffs) appeal from orders of the trial court dismissing two of their claims against Defendant United States Specialty Sports Association (USSSA) for failure to state a claim upon which relief

can be granted and granting summary judgment in favor of USSSA on Plaintiff Judy Warren's claim of assault. The issues presented on appeal are (1) whether the trial court erred in dismissing for failure to state a claim Plaintiffs' claims for intentional infliction of emotional distress and false light invasion of privacy, and (2) whether the trial court erred in granting summary judgment in favor of USSSA on Judy Warren's claim for assault. Upon review of the record on appeal and applicable law, we find that the trial court did not err in dismissing Plaintiffs' claims for intentional infliction of emotional distress and false light invasion of privacy; we further find that USSSA is entitled to judgment as a matter of law on Judy Warren's assault claim.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Plaintiffs filed a petition asserting three claims against USSSA—intentional infliction of emotional distress, "false light," and assault. USSSA asserted in its answer that Plaintiffs failed to state a claim upon which relief could be granted. It later filed a motion to dismiss Plaintiffs' claims of intentional infliction of emotional distress on the grounds that Plaintiffs failed to demonstrate severe emotional distress and extreme and outrageous conduct and also failed to allege each and every element of false light invasion of privacy. The trial court sustained USSSA's motion to dismiss but gave Plaintiffs ten days to file an amended petition.

¶ 3 Plaintiffs' amended petition included the following factual allegations:

- The Midwest City Outlaws, an eight-and-under baseball team, entered a double-elimination tournament sponsored by USSSA. The winner of the tournament was to be named state champion. Plaintiffs claim that the Outlaws paid the entry fee "and all other prerequisites and conditions were satisfied by the team."

- The Outlaws won their first tournament game and the team was scheduled to play again the next day.

- Someone protested the Outlaws' game on the ground that it "had used an illegal player, had an incorrect roster, had no roster at all, had an unsigned roster or was otherwise in violation of some other rule of USSSA."

- The protest was made to the person in charge of the tournament, Ted Cox, who is the Oklahoma State Director of USSSA, and a member of the organization.

- Although no one officially informed the Outlaws' coaches that the protest had been upheld, Mike and Judy Warren heard that Cox had upheld the protest and declared the Outlaws' first game a forfeit, thereby placing the team in the losers' bracket.

- The coaches presented documentation that cured any alleged violation, and Cox received adequate assurance that the Outlaws had abided by all the rules.

- Cox "intentionally and recklessly forfeited" the Outlaws' game because he allowed two other teams to play in the tournament without abiding by the same rules he applied to the Outlaws.

- Judy and Mike Warren went to Cox's office to discuss the matter, but Cox would not rationally discuss the matter and he "suddenly, became enraged, jumping out of his chair and charging straight at Judy Warren, yelling and screaming at Mrs. Warren in a threatening and menacing manner. Mike Warren jumped in front of Judy Warren just as Cox got to her, pulled [her] away and both left Cox's office immediately."

- The umpire informed the coach that the Outlaws' next scheduled game would begin at 3:00 p.m. on that same day. By the time the Outlaws were informed of the game time, it was too late to gather up all of the team members, and the game was declared a forfeit. The forfeit meant that the Outlaws were out of the tournament, which brought the Outlaws' season to a close.

- "All of the team members, and their parents and relatives, [including Plaintiffs], were extremely disappointed, upset and distraught." Cox's allegations that the team and coaches had done something improper or against USSSA rules

also embarrassed and humiliated the team, coaches, parents, and relatives.

- The Plaintiffs suffer from "severe and ongoing" emotional distress, including "grief, shame, humiliation, anger, disappointment and worry." The members of the team, including Cameron Normore, "are still referred to as 'cheaters' by members of the public, to include players on other teams, and the team's reputation has been permanently damaged."

- Cox was acting as USSSA's employee and agent and acting within the scope of his authority at all time relevant to the lawsuit.

¶ 4 USSSA filed a renewed motion to dismiss claiming that, even with the additional factual assertions, Plaintiffs failed to state a claim for intentional infliction of emotional distress or false light invasion of privacy. The trial court dismissed the claims.

¶ 5 USSSA filed a motion for summary judgment on the sole remaining cause of action, Judy Warren's claim of assault. USSSA set out 34 material undisputed facts. It claimed that it does not operate sports leagues or tournaments at local or state levels and that local leagues are typically formed by individual communities that create non-profit volunteer associations to run leagues. Such local leagues can register with different and sometimes multiple national organizations so that the league can play in tournaments sanctioned by the national organizations.

¶ 6 USSSA is one national organization with which leagues can register, but it has no involvement in the management or operation of the local leagues. It simply accepts a fee from teams and allows them to play in USSSA sanctioned events. During the youth baseball season, various leagues sponsor tournaments. If the host of the tournament is registered with USSSA, and the host pays an additional fee, the tournament becomes a USSSA sanctioned event, but USSSA does not have a role in the management or operation of the tournament.

¶ 7 USSSA also does not operate the USSSA state tournament. Sports associations and league operators seek to be awarded the right to host the state tournament, and the state director, who is appointed by USSSA, awards the right to host the state tournament. The entity that is chosen runs the tournament and performs such tasks as setting the schedule, hiring the umpires, and running the concession. USSSA is only involved in sanctioning the tournament, accepting the fee, and providing the rules. The winners of the tournaments are recognized as the USSSA state champion. Leagues and teams register with USSSA to have an opportunity to participate in events such as the state championships and sanctioned national and world series events.

¶ 8 USSSA is a national, non-profit sports association incorporated in Virginia with national headquarters in Orlando, Florida. Its purpose is "to serve and perform as a multi-sports association by creating, promoting, and organizing programs in various sports." The organization has its own board of directors and national officers, and each individual sport has its own board of directors which appoints a state director for the individual sport. The state director, who is not an employee of USSSA and receives no compensation for his or her appointment, has the right to organize his or her state program. The state director both recruits league and non-league teams to register with USSSA and promotes USSSA sanctioned tournaments and awards and promotes the state tournament. The director creates state bylaws and tournament rules that govern how tournaments in the state are conducted. The director earns revenue by registering leagues and teams and generating tournament entry fees. The director retains a portion of the registration fee but must remit part of the registration fee and all of the sanctioning fees to USSSA. Each director "literally runs his own business."

¶ 9 USSSA appointed Ted Cox as Oklahoma state director for baseball in 1997, and he established TCRG Sports, Inc., an Oklahoma company doing business as USSSA Baseball. Cox owns 100% of TCRG, Inc. Cox collects a fee from local and state tournaments, and he keeps a portion and remits a portion to USSSA. He does not receive a

wage or salary from USSSA, and it does not supervise or manage his operation.

¶ 10 Cameron Normore, a member of the Outlaws, played in a USSSA state tournament in June 2003. At the tournament, other teams made allegations against the Outlaws and one team filed an official complaint. The Outlaws were ultimately eliminated from the tournament. The alleged assault on Judy Warren took place at Cox's office, which is not located at the ball fields where the tournament was taking place.

¶ 11 USSSA argued that, even if Cox took the actions alleged by Plaintiffs and committed an assault, it could not be held liable for his actions. It claimed that it was not liable under the theory of respondeat superior because it had no involvement in the events that gave rise to the alleged assault, and Cox did not act in furtherance of any purpose of USSSA.

¶ 12 In their response, Plaintiffs failed to dispute the undisputed facts presented by USSSA in its motion for summary judgment,[1] but instead listed their own "Undisputed Facts." Plaintiffs claimed the Outlaws "properly entered and participated in" the state tournament. Cox forfeited the game the Outlaws had won, but failed to tell them when the next scheduled game was to take place, and the Outlaws were out of the tournament. When confronted, Cox yelled and screamed at Judy Warren and charged at her in a threatening and menacing manner.

¶ 13 Plaintiffs agreed with USSSA that it appoints a state director who awards the right to host the tournament and that USSSA accepts a fee, provides the rules, and sanctions the tournament. Plaintiffs additionally claimed that USSSA promulgates the official playing rules for the actual playing of the game, including rules regarding approved equipment and facilities, and the rules appear in an official rule book.

¶ 14 Plaintiffs agreed that Cox was appointed by USSSA in 1997 and claimed that, although Cox has the authority to promulgate rules and regulations, any such rules cannot contradict or conflict with those of USSSA. The constitution of the USSSA gives a state director the authority to disbar a player, coach or team for " 'knowingly competing with or against ineligible or suspended players.' " The constitution also provides that USSSA's state officers are under the jurisdiction of the state director. The USSSA may disbar any state director who engages in unsportsmanlike conduct, abusive tactics, or acts that are detrimental or not in the best interest of USSSA. A director may also be suspended for violating USSSA's rules, policies, and procedures, or failing to submit fees and information within fourteen days of receipt. State directors have the authority to suspend players or participants and to eject a player or team from a tournament. USSSA owns all copyrights and telecast and broadcast rights to sanctioned or sponsored events. Plaintiffs claim, "At all times relevant, Ted Cox was enforcing the rules and regulations of USSSA as same pertained to the setting up and running of state baseball tournaments in Oklahoma."

¶ 15 The only undisputed fact listed by Plaintiffs was whether Cox assaulted Judy Warren. In its reply to Plaintiffs' response, USSSA did not respond to Plaintiffs' statement of undisputed facts. The trial court

---

1. Rule 13 of the Rules for the District Court of Oklahoma, 12 O.S. Revised Supp.2005, Ch. 2, App. 1, provides for the following procedure in opposing a motion for summary judgment:

    Unless otherwise ordered by the court, the adverse party shall attach to the statement evidentiary material justifying the opposition to the motion, but may incorporate by reference material attached to the papers of another party. In the statement, the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials. All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material. If the motion for summary judgment or summary disposition is granted, the party or parties opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists.

    Plaintiffs failed to follow this procedure.

granted summary judgment in favor of USS-SA. Plaintiffs appeal.

## STANDARD OF REVIEW

¶ 16 The purpose of a motion to dismiss for failure to state a claim is to "test the legal sufficiency of the pleadings, not to evaluate the underlying facts. The question before us is hence whether, taking all of [Plaintiffs'] allegations as true, [they are] precluded from recovering as a matter of law." *Patel v. OMH Med. Ctr., Inc.,* 1999 OK 33, ¶ 43, 987 P.2d 1185, 1202 (footnotes omitted).

¶ 17 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" *Davis v. Leitner,* 1989 OK 146, ¶ 9, 782 P.2d 924, 926. When reviewing the grant of summary judgment, we must view all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the party opposing the motion. *Id.*

¶ 18 Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision is purely legal: "whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Therefore, our standard of review on appeal is de novo. *Id.*

## ANALYSIS

### I. Intentional Infliction of Emotional Distress

¶ 19 Oklahoma law recognizes the tort of intentional infliction of emotional distress, also known as outrage. *Miner v. Mid–America Door Co.,* 2003 OK CIV APP 32, ¶ 41, 68 P.3d 212, 223. In order to recover, "a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publ'ns, Inc. v. Welton,* 2002 OK 50, ¶ 7, 49 P.3d 732, 735.

¶ 20 Liability for the tort has only been found where the offending conduct "has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress." *Miller v. Miller,* 1998 OK 24, ¶ 33, 956 P.2d 887, 901.

> "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

*Id.* (quoting Restatement (Second) of Torts § 46 cmt. d). *See also Worsham v. Nix,* 2004 OK CIV APP 2, n. 4, 83 P.3d 879, 888.

¶ 21 Liability does not extend " 'to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *Eddy v. Brown,* 1986 OK 3, ¶ 7, 715 P.2d 74, 77 (quoting Restatement (Second) of Torts § 46 cmt. d). "The tort of outrage protects emotional tranquility *against serious invasion only. Extraordinary* transgression of the bounds of civility is required." *Id.* at n. 6.

¶ 22 To insure that only valid claims reach a jury, the trial court must initially act as a gatekeeper to determine if an alleged tortfeasor's conduct is sufficiently extreme and outrageous and if the plaintiff suffered severe emotional distress. *Computer Publ'ns,* 2002 OK 50 at ¶ 16, 49 P.3d at 737. For example, in *Mason v. State of Oklahoma ex rel. Board of Regents of the University of Oklahoma,* 2001 OK CIV APP 33, 23 P.3d 964, a former law student alleged that the University's failure to consider his application for readmission after his expulsion amounted to outrageous conduct sufficient to state a claim for intentional infliction of emotional distress. The Court stated, "We have no difficulty in affirming the trial court's decision that this conduct falls far short of the level of 'outrageous' conduct necessary to support a cause of action for intentional in-

fliction of emotional distress." *Id.* at ¶ 14, 23 P.3d at 970.

¶ 23 We find that the trial court did not err in dismissing Plaintiffs' claim for intentional infliction of emotional distress. Cox's decision to require the Outlaws to forfeit a game after an official complaint was lodged against the team is not conduct that is so extreme and outrageous as to meet the standard for the tort of intentional infliction of emotional distress. Cox's actions did not so totally exceed the bounds of acceptable behavior that, upon a recitation of the facts, an average member of the community would exclaim "outrageous." *See Worsham*, 2004 OK CIV APP 2 at n. 4, 83 P.3d at 888. Even if we view all of the facts and inferences in a light most favorable to Plaintiffs, Cox's actions do not rise to the level of extreme and outrageous conduct.

## II. *False Light Invasion of Privacy*

■ ¶ 24 A plaintiff alleging a cause of action for false light invasion of privacy must prove the following:

> (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Mitchell v. Griffin Television, L.L.C.*, 2002 OK CIV APP 115, ¶ 7, 60 P.3d 1058, 1061. The Supreme Court in *Colbert v. World Publishing Co.*, 1987 OK 116, ¶ 16, 747 P.2d 286, 292, set out the standard to which an alleged tortfeasor's conduct must rise:

> We find that the right of action for false light invasion of privacy is a product of the same societal need as the tort of outrage or intentional infliction of emotional distress, which *will lie only in the presence of extreme and outrageous conduct.* We have adopted a standard of knowing or reckless conduct to afford recovery to those who suffer mental anguish by reason of a false light invasion of privacy. Consequently, we are committed to that stan-

dard, and will not now adopt a standard of recovery which imposes liability on one who accidentally or negligently injures the feelings of another.

(Emphasis added.)

¶ 25 In the preceding section, we concluded that Cox's behavior in deciding to forfeit the Outlaws' game did not rise to the level of extreme and outrageous conduct that would create liability for intentional infliction of emotional distress. Likewise, we find that any "publication" by Cox of the information regarding the forfeiture, or alleged violations by the Outlaws which resulted in the forfeiture, does not rise to the level of extreme and outrageous conduct set out in *Colbert*. Plaintiffs do not allege that Cox specifically told *anyone* of the forfeiture or reasons for it. Plaintiffs simply allege that the Warrens *heard* that Cox upheld the protest. Placing the Outlaws in the losers' bracket, which one might consider a "publication" of the information, does not reach the level of extreme and outrageous conduct that would give rise to a cause of action for intentional infliction of emotional distress. Applying the holding of *Colbert*, Cox's actions will not support a claim of false light invasion of privacy.

¶ 26 In *Wooten v. Pleasant Hope R–VI School District,* 270 F.3d 549 (8th Cir.2001), a high school student who had been expelled from her softball team after she failed to appear at a scheduled game brought a lawsuit against the school district asserting claims for violation of privacy and intentional infliction of emotional distress. The coach of the team announced to the other players that the student had been expelled from the softball program, but the student learned of her expulsion from an acquaintance the morning after she missed the game. The trial court dismissed the student's lawsuit for failure to state a claim upon which relief can be granted. The United States Court of Appeals for the Eighth Circuit upheld the trial court's dismissal. The Court acknowledged that, although the student may have felt she was wrongfully expelled, "the law does not provide a remedy for every perceived harm." *Id.* at 551.

¶ 27 Although Plaintiffs may have felt wrongfully accused and embarrassed by Cox's actions, they have failed to allege a cause of action against USSSA for false light invasion of privacy. Accordingly, we affirm the trial court's decision granting USSSA's motion to dismiss for failure to state a claim.

### III. Assault

¶ 28 Plaintiffs attempt to establish USSSA's liability for the alleged assault on the theory of respondeat superior, which allows an employer to be held liable for "the willful torts of an employee acting within the scope of employment in furtherance of assigned duties." *N.H. v. Presbyterian Church*, 1999 OK 88, ¶ 14, 998 P.2d 592, 598. In their response to USSSA's motion for summary judgment, Plaintiffs set out numerous "undisputed facts" aimed at establishing an agency relationship between USSSA and Cox. We find that, even if questions of fact remain as to whether an agency relationship existed between USSSA and Cox which would preclude the grant of summary judgment on the issue of agency, the undisputed facts show that USSSA cannot be held liable for the assault. USSSA is entitled to judgment as a matter of law because the assault was not within the scope of the alleged employment relationship between USSSA and Cox, and Cox was not acting in furtherance of any purpose of USSSA when he allegedly committed the assault.

¶ 29 "To hold an employer responsible for the tort of an employee, the tortious act must be committed in the course of the employment and within the scope of the employee's authority." *Baker v. Saint Francis Hosp.*, 2005 OK 36, ¶ 10, 126 P.3d 602, 605. As a general rule, an assault upon a third party is not within the scope of employment. *N.H.*, 1999 OK 88 at ¶ 14, 998 P.2d at 598. There are three exceptions to this general rule: "1) the act is fairly and naturally incident to the employer's business; 2) the act occurs while the employee is engaged in an act for the employer; or 3) the assault arises from a natural impulse growing out of or incident to the attempt to complete the master's business." *Id.* at ¶ 14, 998 P.2d at 598–99. Allegation that the assault occurred during an employment-related activity "is insufficient to assess liability against the employer unless the act was done to accomplish the assigned work." *Id.*

¶ 30 Although Mike and Judy Warren allege that "at relevant times" Cox was acting as an employee and agent of USSSA, they did not allege that the assault occurred while Cox was actually engaged in USSSA's business. They claim they went to Cox's office to "find out what was going on," and Cox yelled and screamed at Judy Warren in a manner that was both threatening and menacing. The undisputed facts reveal that Cox's office is "at a different location from the ball fields where the tournament was taking place." Plaintiffs do not contend that USSSA provides Cox with an office, nor that the office in which the alleged assault took place is even used by Cox to conduct USSSA business.

¶ 31 The question of whether an act is within the scope of employment is ordinarily left to the finder of fact. *Baker*, 2005 OK 36 at ¶ 16, 126 P.3d at 606. "Only when one reasonable conclusion can be drawn from the facts is it appropriate for a court to rule on a *respondeat superior* issue as a matter of law." *Id.* at ¶ 16, 126 P.3d at 607.

¶ 32 Here, only one reasonable conclusion can be drawn from the undisputed facts. The alleged assault is not fairly and naturally incident to USSSA's business of sanctioning sports tournaments. At the time the alleged assault occurred, Cox was not engaged in an act for USSSA and was not furthering any purpose of USSSA. Cox did not confront Plaintiffs in order to accomplish work assigned to him by USSSA. The conduct complained of did not occur where the tournament was located and did not occur at the time Cox made the decision to forfeit the Outlaws' game as evidenced by the fact that the Warrens went later to confront Cox about the forfeiture. The alleged assault did not arise out of any natural impulse incident to completing USSSA's business. There is no indication that Cox was required to perform any acts for USSSA which would create a natural impulse to commit an assault.

¶ 33 Plaintiffs have failed to allege facts sufficient to show that an exception to the general rule applies here. We must apply the general rule that an assault on a third

588

party is not within the scope of employment. The trial court did not err in granting summary judgment in favor of USSSA because the alleged assault did not occur while Cox was acting within the scope of his alleged employment or agency relationship.

## CONCLUSION

¶ 34 The trial court did not err in granting USSSA's motion to dismiss Plaintiffs' claims for intentional infliction of emotional distress and false light invasion of privacy because Cox's behavior was not extreme and outrageous. USSSA is further entitled to judgment as a matter of law on Judy Warren's claim of assault. Accordingly, we affirm the decisions of the trial court.

¶ 35 AFFIRMED.

GOODMAN, J., and REIF, J. (sitting by designation), concur.